845 P.2d 130

**Rose Mary CARRILLO,
Plaintiff–Appellee,**

v.

**David ROSTRO, Evelyn Jones, Eraldo Lucero and Louis Marquez, members and former members of the Board of Education of the Bernalillo Public Schools, in their individual capacities, Defendants–Appellants.**

**No. 19650.**

Supreme Court of New Mexico.

Aug. 28, 1992.

Simons, Cuddy & Friedman, C. Emery Cuddy, Jr., Charles D. Noland, Santa Fe, for appellants.

Levin & Vance, Claud Eugene Vance, Albuquerque, for appellee.

## OPINION

MONTGOMERY, Justice.

In this case we address two important questions of first impression in New Mexico, one substantive, the other procedural. The substantive question is whether the defendant school board members, who refused to renew the plaintiff school principal's contract because of her criticism of the Board at a public meeting, may invoke the defense of qualified immunity to plaintiff's civil rights claims. Plaintiff sued under 42 U.S.C. § 1983 (1988) for defendants' alleged violation of her First and Fourteenth Amendment right to speak at a public meeting.[1]

The procedural question, which we must resolve first because it relates to our jurisdiction to hear this appeal, is whether the trial court's denial of summary judgment on defendants' qualified immunity defense

---

1. Plaintiff also sued for defendants' alleged deprivation of her right to continued employment without affording her due process. As we discuss *infra*, plaintiff has conceded defendants' assertion of qualified immunity on this claim.

is reviewable, before trial, under the collateral order doctrine adopted by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). More broadly, the procedural question is whether we should adopt the *Cohen* collateral order rule in New Mexico and, if so, how that rule should be implemented.

As indicated, the trial court denied the defendants' motion for summary judgment, ruling against them on their claim that they were entitled to qualified immunity on plaintiff's Section 1983 claims. We hold that this pretrial order is reviewable, adopt the collateral order doctrine in New Mexico, and outline how that doctrine is to be invoked in a case in which it may be properly raised. On the merits, we affirm the district court's denial of summary judgment, holding, on facts taken as true for purposes of summary judgment, that qualified immunity was not available to the defendants because their action violated plaintiff's First Amendment right to address the Board in a public meeting concerning a matter of public concern.

## I. FACTS AND ISSUES

On March 19, 1987, the Board of Education of the Public School District in Bernalillo, New Mexico, held a public meeting to consider whether to make up three school days that had been missed at Carroll Elementary School because of a broken water pipe. Plaintiff Rose Mary Carrillo, who was then the principal of Carroll Elementary, was present at the meeting, as were defendants David Rostro, Evelyn Jones, and Eraldo Lucero, each of whom was a member of the Bernalillo Board of Education. The meeting was also attended by a number of other persons, including parents and staff members from Carroll Elementary.

During the meeting, the Board expressed a desire that the superintendent of the school district request a waiver from the State Department of Education so that the school days would not have to be made up. In response, plaintiff voiced her opposition to the Board's position. The parties disagree as to plaintiff's demeanor and the tone of her speech to the Board. According to defendants, plaintiff criticized the Board's position and questioned its commitment to quality education. They characterize her behavior as abrasive, harassing, inappropriate, and unprofessional. Plaintiff, on the other hand, denies that she criticized the Board; rather, she contends, she "spoke forcefully but professionally" and "presented a strong but composed public statement" of her belief that the school days should be made up.

In April of the following year, 1988, defendants voted not to renew plaintiff's contract as principal of Carroll Elementary School. Rostro, Jones, and Lucero admitted that they based their decision in part on plaintiff's behavior at the March 1987 meeting. They considered her conduct at the meeting as one of several indicators that she was unsuitable for continued employment as an administrator in the Bernalillo public schools. They offered her employment as an elementary school teacher, which she initially accepted but later resigned.

In mid–1988, plaintiff filed suit against defendants in their official capacities as members of the Bernalillo Board of Education, seeking relief for, among other things, violation of her civil rights under § 1983. After the United States Supreme Court's decision in *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), made it clear that the Board and its members in their official capacities were not subject to suit for money damages under § 1983, plaintiff amended her complaint to seek damages under that section against the defendants in their individual capacities.[2] In her amended complaint, insofar as rele-

**2.** The amended complaint also asserted claims against the Board for breach of an implied employment contract and for violation of NMSA 1978, §§ 14–2–1 to –3 (Repl.Pamp.1988) (giving citizens right to inspect public records) and various tort claims against defendant Rostro as an individual. Only plaintiff's Section 1983 claims against the individual defendants are involved in this appeal.

vant to this appeal, plaintiff alleged that defendants' decision not to renew her contract as principal was made in retaliation for her comments at the March 1987 meeting and therefore violated her First Amendment right to free speech and deprived her of her interest in continued employment without due process of law.

In their answer to plaintiff's amended complaint, defendants raised the defense of qualified immunity to plaintiff's claims against them in their individual capacities. Soon thereafter, defendants filed a motion for summary judgment as to all of plaintiff's claims. With respect to her Section 1983 claims, defendants asserted that they were entitled to qualified immunity from suit, based on the rule in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and on its elaboration in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), that government officials performing discretionary functions are immune from liability *and from suit* for conduct that does not violate clearly established law. Defendants argued that their decision not to renew plaintiff's contract did not violate any clearly established law with respect to any of plaintiff's asserted rights.

Plaintiff responded to defendants' motion, arguing that genuine issues of material fact existed and thus precluded summary judgment. In particular, on the free speech claim, plaintiff identified the following disputed issues of fact: whether her demeanor and the tone of her speech at the March 1987 meeting were professional or unprofessional, whether her conduct at the meeting was a motivating factor in the Board's decision, and whether the additional reasons given by defendants to support their decision were pretextual. On the procedural due process claim, plaintiff maintained that the facts were in dispute over whether she had an implied contract of employment that would give rise to proce-

dural due process rights surrounding any decision not to rehire her as principal.

The trial court heard oral arguments and on January 3, 1991, entered an order denying defendants' motion. With respect to their request for qualified immunity, the court reasoned that questions of fact as to what occurred at the March 1987 meeting precluded summary judgment on the free speech claim and that "the question of law ... on the contract issue is not clear-cut and we'll go to the jury on that issue also." In its order, the court denied defendants' request that it certify the qualified immunity issue for immediate review under this state's statute providing for interlocutory appeals.[3]

Despite the trial court's refusal to certify its order for immediate review, defendants filed a notice of appeal, asserting an immediate right of appeal from the district court's denial of their motion for summary judgment raising the defense of qualified immunity. Defendants based this assertion on *Mitchell v. Forsyth*, in which the Supreme Court held that a denial of qualified immunity on a Section 1983 claim is final and appealable under the collateral order doctrine. 472 U.S. at 530, 105 S.Ct. at 2817. Defendants now make two arguments on appeal: First, that New Mexico should recognize a pretrial right of appeal from a district court's denial of a public official's motion for summary judgment seeking qualified immunity from a Section 1983 claim; second, that the trial court erred in refusing to grant them qualified immunity. Defendants enlarge on their second argument by claiming that, in April 1988 when they refused to rehire plaintiff, she did not have a clearly established right to continuation of her employment even though it was terminated (a) because of her speech at the March 1987 meeting and (b) without according her any procedural due process.

Before turning to these arguments, we pause to note that plaintiff has

---

**3.** NMSA 1978, § 39-3-4 (Repl.Pamp.1991) (immediate review of an interlocutory order or decision that does not practically dispose of the merits of the action is authorized if trial court certifies that the order or decision involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation).

essentially abandoned her due-process claim on this appeal. At oral argument, her counsel in effect conceded that the law in April 1988 did not clearly establish that plaintiff had a right to continued employment that could only be terminated by affording her certain minimal due-process protections. In initially arguing that she had such a right, plaintiff relied in large part on *Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 766 P.2d 280 (1988), *cert. denied*, 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989), which most assuredly is one of the leading cases in New Mexico establishing that an implied employment contract may be found from the "totality of the parties' relationship," including the employer's past conduct and dealings with employees. *Id.* at 26, 766 P.2d at 286. However, *Kestenbaum* was not decided until seven months after April 1988, and in any event involved the conduct of a private employer, not a governmental entity. Contracts with governmental entities must be in writing, NMSA 1978, § 37–1–23(A) (Repl.Pamp.1990). Defendants argue that no reported decision has dealt with the "collision" between the implied contract doctrine in private employment and Section 37–1–23(A), though *Trujillo v. Gonzales*, 106 N.M. 620, 747 P.2d 915 (1987), certainly comes close. In *Trujillo*, oral promises *inconsistent* with the written record of the parties' employment agreement were held unenforceable, either because of a conflict with Section 37–1–23 or because of the parol evidence rule. *Id.* at 621–22, 747 P.2d at 916–17. At the least, in April 1988 it was an open question whether an implied

contract with a governmental entity could exist when important *supplemental* terms were unwritten, so the issue was not a matter of clearly established law. In addition, the trial court found that "the contract issue is not clear-cut and we'll go to the jury on that issue also." Under these circumstances, plaintiff correctly conceded that the law regarding her entitlement to continued employment under an implied contract was not clearly established in April 1988. The summary judgment must therefore be reversed (assuming we have jurisdiction) insofar as it refuses qualified immunity on this issue, and plaintiff's Section 1983 claim for deprivation on due-process grounds of her asserted entitlement to continued employment should not go to the jury.[4]

In the discussion that follows, we shall consider whether we should adopt the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.;* how that doctrine applies to defendants' appeal of the trial court's denial of their motion for summary judgment; how the doctrine should be implemented in this state; and finally, on the merits, whether defendants were entitled to summary judgment on their claim of qualified immunity from suit for refusing to renew plaintiff's contract because of her speech at the March 1987 meeting.

## II. JURISDICTION AND THE COLLATERAL ORDER DOCTRINE

■ It is of course firmly established that, subject to certain exceptions, this

---

**4.** This does *not* mean that plaintiff's state-law claim for breach of an implied contract of continued employment has been adjudicated against her. As defendants repeatedly stress in their briefs, the issue of entitlement to qualified immunity in a Section 1983 case is quite different from the issue of defendants' potential liability for breach of an implied contract of employment under the governing state law. The former issue raises a question of federal law under *Harlow v. Fitzgerald* and requires an inquiry into the objective legal reasonableness of the defendants' belief that their conduct was lawful in light of clearly established standards in April 1988. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d

523 (1987); *see also Garcia v. Las Vegas Medical Ctr.,* 112 N.M. 441, 443, 816 P.2d 510, 512 (Ct. App.), *cert. denied,* 112 N.M. 308, 815 P.2d 161 (1991). This is not the same as the question whether, under the totality of the circumstances referred to in *Kestenbaum* (and subject to the caveat mentioned in the text concerning the applicability of the implied employment contract theory in the governmental context, given the provisions of Section 37–1–23(A)), a contract did in fact exist between plaintiff and the school district and was breached by the defendants when they refused to renew it. This latter question is not before us on appeal, is not foreclosed by anything in this opinion, and remains to be decided at trial in the district court.

Court has no jurisdiction to review an order or decision that is not final, as contemplated by NMSA 1978, Section 39–3–2 (Repl.Pamp.1991). *See, e.g., In re Quintana,* 82 N.M. 698, 487 P.2d 126 (1971) (interpreting former Supreme Court Rule 5(2), which contained language substantially similar to Section 39–3–2). That statute confers jurisdiction on the appropriate appellate court when an aggrieved party timely appeals from "any final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights," entered by the district court. The jurisdictional question in this case is whether an order denying qualified immunity to a public official on a Section 1983 claim is a "final decision."

An essentially similar question was answered affirmatively by the Supreme Court in *Cohen.* There, the issue was whether the court of appeals had jurisdiction to review a federal district court's order refusing to require the plaintiff shareholder to post security, at the outset of the litigation, for the defendant corporation's anticipated litigation costs in the plaintiff's stockholder's derivative suit. The applicable statute conferring appellate jurisdiction—the analogue to our Section 39–3–2— was what is now 28 U.S.C. § 1291 (1988). That statute vests the federal courts of appeals with "jurisdiction of appeals from all final decisions of the district courts of the United States...." Affirming the appealability of the district court's order under this statute, the Supreme Court fashioned what has come to be known as the collateral order doctrine:

[The district court's] decision appears to fall in that *small class* which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated....

We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of

action and does not require consideration with it.

*Cohen,* 337 U.S. at 546–47, 69 S.Ct. at 1225–26 (emphasis added).

In subsequent decisions, the Supreme Court has restated and clarified the requirements of the doctrine. In recent years, the Court has said:

The collateral order doctrine is a "narrow exception," whose reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal. To fall within the exception, an order must at a minimum satisfy three conditions: It must "conclusively determine the disputed question," "resolve an important issue completely separate from the merits of the action," and "be effectively unreviewable on appeal from a final judgment."

*Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 430–31, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978)) (other citations omitted).

As Professor Moore states:

The third leg of the *Cohen* test, the requirement that the decision must be "effectively unreviewable on appeal from final judgment," contains the essence of the collateral order doctrine. An incorrect determination of an issue that goes to the merits of a case generally does the affected party no harm until entry of judgment, apart from the delay and expense inherent in litigation. Therefore, except in very unusual circumstances, no substantive rights are threatened by adhering to the final judgment rule. By contrast, orders in the course of litigation that do not address the merits ordinarily are effective immediately; to the extent that they implicate rights separate from the cause of action, such rights may be irretrievably lost unless the party aggrieved may obtain immediate review.

9 James W. Moore et al., *Moore's Federal Practice 2d* ¶ 110.10, at 73 (1992) (footnotes omitted). We agree that, while the other prerequisites to application of the doctrine

are important, the requirement that the order sought to be reviewed implicates rights that will be irretrievably lost, absent immediate review and regardless of the outcome of an appeal from the final judgment, is the essence of the collateral order doctrine.

■ The doctrine has been applied in a number of Supreme Court cases in recent years.[5] The doctrine has also been adopted by appellate courts in a number of states.[6] In New Mexico, the *Cohen* case has been cited two or three times, but neither this Court nor the Court of Appeals has ever ruled on whether the doctrine should be adopted in this state. In *Central–Southwest Dairy Cooperative v. American Bank of Commerce,* 78 N.M. 464, 466–67, 432 P.2d 820, 822–23 (1967), and recently in *Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 236, 240, 824 P.2d 1033, 1038, 1042 (1992), we cited *Cohen* and quoted from *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964), to support the proposition, which we reiterate now, that the requirement of finality is to be given a practical rather than a technical construction. Neither of these (New Mexico) cases considered whether to adopt the collateral order doctrine. That question was before the Court of Appeals in *Allen v. Board of Education,* 106 N.M. 673, 748 P.2d 516 (Ct.App.1987), but the court expressly declined to rule on it. *Id.* at 674, 748 P.2d at 517. Instead, the court held that the order on which review was sought—an order denying a motion to dismiss the plaintiff's

claims and for summary judgment on grounds of immunity under the Tort Claims Act—did not "finally determine a claim which is 'separable from,' 'collateral to' or 'independent of' the cause itself, but rather requires a determination of the very ingredients of the causes of action themselves." *Id.* The court thus distinguished the order before it, which was inextricably bound up with the merits of the plaintiff's claims, from an order which is collateral to or independent of the merits and which, given its collateral nature, is essentially unreviewable upon review of the final judgment in the case.

## III. APPEALABILITY OF AN ORDER DENYING QUALIFIED IMMUNITY

In explaining its rationale and the distinction just noted, the Court of Appeals in *Allen* pointed out another distinction, which is crucial to an understanding of why the collateral order doctrine, though not applicable in *Allen,* does apply in the present case. That distinction is the difference between the immunity granted by the Tort Claims Act and the immunity conferred by cases such as *Harlow v. Fitzgerald.* The former is an immunity *from liability,* whereas the latter is an immunity *from suit.* As the Court of Appeals said, "A distinction has been drawn between '*immunity from suit* rather than a mere defense to liability' because, 'like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Al-*

---

**5.** *See, e.g.,* the following cases granting review of various interlocutory orders: *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (order granting stay of action when similar suit is pending in state court); *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (order denying motion to dismiss on grounds of absolute immunity from suit); *Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (order denying motion to dismiss under the Speech or Debate Clause); *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (order denying motion to dismiss on double jeopardy grounds).

**6.** *See, e.g.,* the following cases granting review of various interlocutory orders: *Hatch v. Minot,*

369 So.2d 974, 977 (Fla.Dist.Ct.App.) (order in eminent domain proceeding directing mortgagors to pay mortgagee funds condemning authority had deposited in court), *cert. dismissed,* 373 So.2d 458 (Fla.1979); *Scroggins v. Edmondson,* 250 Ga. 430, 297 S.E.2d 469, 471–72 (1982) (order granting motion to cancel notice of lis pendens); *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.,* 68 Haw. 98, 705 P.2d 28, 34 (1985) (order denying motion for stay pending arbitration); *Jolley v. State,* 282 Md. 353, 384 A.2d 91, 94 (1978) (order finding defendant incompetent to stand trial in criminal case); *In re Estate of Georgiana,* 312 Pa.Super. 339, 458 A.2d 989, 991 (1983) (order denying petition for removal of executor), *aff'd,* 504 Pa. 510, 475 A.2d 744 (1984).

*len,* 106 N.M. at 675, 748 P.2d at 518 (quoting *Mitchell v. Forsyth,* 472 U.S. at 526, 105 S.Ct. at 2815).

In *Mitchell,* the Court noted, and as we have already recognized, that "[a] major characteristic of the denial or granting of a claim appealable under *Cohen's* 'collateral order' doctrine is that 'unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all.'" 472 U.S. at 525 (alteration in original) (quoting *Stack v. Boyle,* 342 U.S. 1, 12, 72 S.Ct. 1, 7, 96 L.Ed. 3 (1951)). The Court continued:

> When a district court has denied a defendant's claim of right not to stand trial, on double jeopardy grounds, for example, we have consistently held the court's decision appealable, for such a right cannot be effectively vindicated after the trial has occurred. Thus, the denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.

*Id.* (citation and footnote omitted). The Court then held that a claim of qualified immunity, as described in *Harlow v. Fitzgerald,* shares the same attribute—namely, "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815.

■ This reasoning leads us to believe that the trial court in this case may have erred when it denied defendants' motion for summary judgment simply because there were issues of fact regarding the tone of plaintiff's speech at the March 1987 meeting and the propriety and professionalism of her conduct at that meeting. On a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing the motion—in this case, the plaintiff—in determining whether an issue requiring trial exists. *E.g., Las Cruces Country Club, Inc. v. City of Las Cruces,* 81 N.M. 387, 387, 467 P.2d 403, 403 (1970); *Pharmaseal Lab., Inc. v. Goffe,* 90 N.M. 753, 756, 568 P.2d 589, 592 (1977); *Young v. Seven Bar Flying Serv., Inc.,* 101 N.M. 545, 547, 685 P.2d 953, 955 (1984). Applying this proposition to a request for qualified immunity, we examine whether the opposing party has presented evidence to support a violation of clearly established law, so as to require a trial on the merits. *See DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 716–18 (10th Cir. 1988); *Tribble v. Gardner,* 860 F.2d 321, 323–27 (9th Cir.1988), *cert. denied,* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989).

■ In the present case, the facts, when viewed in the light most favorable to the plaintiff, are that the plaintiff spoke professionally, though forcefully, and presented a composed, though strong, public statement that the school days in question should be made up. Under this version of the facts, we must answer the following question: When defendants refused to renew plaintiff's contract as principal because of her conduct at the meeting, did they violate clearly established law of which a reasonable person would have known? If so, then defendants were not entitled to qualified immunity and the motion was properly denied; if not, then the motion should have been granted, because denying the motion on the ground that the facts were in dispute subjected defendants to the very risks and burdens that the qualified immunity defense is intended to avoid. As *Harlow* and its progeny make clear, the issue of a public official's objective reasonableness in engaging in the challenged conduct, as measured by reference to clearly established law at the time the conduct occurred, is essentially a legal issue; and a motion for summary judgment raising this issue early in the litigation is an appropriate means for invoking the court's ruling on the question. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Mitchell,* 472 U.S. at 526, 528, 105 S.Ct. at 2816; *Siegert v. Gilley,* — U.S. —, —, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988). As in *Mitchell,* "the

court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to *stand trial* on the plaintiff's allegations...." 472 U.S. at 527, 105 S.Ct. at 2816. And so, as in *Mitchell,* the collateral order doctrine applies and the court's denial of summary judgment is reviewable.[7]

## IV. PROCEDURE FOR INVOKING THE COLLATERAL ORDER DOCTRINE: THE WRIT OF ERROR

 The collateral order doctrine has its shortcomings, and numerous courts have therefore limited its application. *See* 15A Charles A. Wright et al., *Federal Practice & Procedure* § 3911, at 353 & n. 64 (2d ed. 1991) ("Alongside the attempts to capture collateral order theory in a formula are many statements that the theory must not be too much expanded, lest the exception swallow the basic finality requirement and swamp dockets with collateral order appeals.") One of the shortcomings is the risk that, if applied in too many contexts, the doctrine will allow interruption of trial court proceedings by any party claiming hardship because of postponement of review—a result that the final-judgment rule seeks to prevent. *See* 9 Moore, *supra,* ¶ 110.07, at 39 (identifying purposes of final-judgment rule). If the doctrine permits

its too ready invocation, the benefits of the final-judgment rule will be lost; and piecemeal appeals—despite this Court's and most other courts' strong policy against them, *Kelly Inn,* 113 N.M. at 238, 824 P.2d at 1041—will become the order of the day.

Perhaps for this reason, the Supreme Court has become increasingly wary of attempts to secure review of interlocutory orders through the collateral order doctrine.[8] This hostility to the doctrine is understandable, but we believe that unwarranted expansion of the "small class" of cases in which the doctrine may be appropriately applied can be curbed by a means other than simply dismissing appeals for want of jurisdiction on the ground that otherwise the requirements for invoking the doctrine would be unduly relaxed.

We believe that an existing procedure in New Mexico, contemplated by our Constitution, statutes, and Rules of Appellate Procedure, provides this alternative means for ensuring that review under the collateral order doctrine occurs only when justified. That procedure, on the books but unused and having virtually no known use in modern appellate practice, is the writ of error.

The writ of error is one of the writs that the Constitution empowers this Court to issue. N.M. Const. art. VI, § 3. It is

---

**7.** We note in this connection that every federal circuit court of appeals has held that an order denying a claim of qualified immunity is reviewable under the collateral order doctrine. *See McLin v. Trimble,* 795 P.2d 1035, 1037 n. 2 (Okla.1990) (citing federal cases). Many state courts have similarly allowed immediate review of such a denial. *See Henke v. Superior Court,* 161 Ariz. 96, 775 P.2d 1160 (Ct.App.1989); *Virden v. Roper,* 302 Ark. 125, 788 S.W.2d 470 (1990); *Lord v. Murphy,* 561 A.2d 1013 (Me. 1989); *Breault v. Chairman of Bd. of Fire Comm'rs,* 401 Mass. 26, 513 N.E.2d 1277 (1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 237 (1988); *Anderson v. City of Hopkins,* 393 N.W.2d 363 (Minn.1986); *Corum v. University of N.C.,* 97 N.C.App. 527, 389 S.E.2d 596 (1990); *Richardson v. Chevrefils,* 131 N.H. 227, 552 A.2d 89 (1988); *McLin v. Trimble.* A few states have not allowed immediate review. *See Ohio Civil Serv. Employees Ass'n v. Moritz,* 39 Ohio App.3d 132, 529 N.E.2d 1290 (1987); *Noyola v. Flores,* 740 S.W.2d 493 (Tex.Ct.App. 1987) (per curiam); *Pizzato's Inc. v. City of Berwyn,* 168 Ill.App.3d 796, 119 Ill.Dec. 583, 523

N.E.2d 51 (involving claim of absolute, not qualified, immunity), *leave to appeal denied,* 122 Ill.2d 593, 125 Ill.Dec. 235, 530 N.E.2d 263 (1988), *cert. denied,* 489 U.S. 1054, 109 S.Ct. 1315, 103 L.Ed.2d 584 (1989).

**8.** *See, e.g.,* the following cases denying review of various interlocutory orders: *Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989) (order denying motion to dismiss on basis of contractual forum selection clause); *Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (order denying motion to dismiss on grounds of forum non conveniens and immunity from civil process); *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (order denying motion to stay or dismiss action when similar suit is pending in state court); *Richardson Merrell Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (order disqualifying counsel in civil case); *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (order disqualifying counsel in criminal case).

provided for by statute, NMSA 1978, § 39–3–5 (Repl.Pamp.1991), and by one of our Rules of Appellate Procedure, SCRA 1986, 12–503. Section 39–3–5 reads:

> Writs of error to bring into the supreme court any cause adjudged or determined in any of the district courts, as provided by law, may be issued by the supreme court, or any justice thereof, if application is made within the time provided by law for the taking of appeals. A writ of error shall issue from the supreme court to the district court only in those actions wherein appellate jurisdiction has not been vested by law in the court of appeals.

Rule 12–503 provides:

> Writs of error will be issued by the supreme court only upon a showing that the remedy by way of appeal is inadequate. Application for a writ of error and proof of service thereof must be filed within the time provided for appeal. If a writ of error is issued, the procedure thereafter shall be the same as though the notice of appeal were filed on the date the writ issues.

In the Appendix to this opinion, we trace the history of the writ of error in New Mexico. Summarizing that history, we see an early recognition by our territorial legislature of the difference between a writ of error as applicable only to review of cases at law, while review by appeal was confined to cases in equity. With the merger of law and equity (insofar as related to the type of action involved), the two avenues to appellate review became coextensive and equally applicable to all district court actions; either could be pursued at the election of the party seeking review, and both required the same degree of finality of the judgment to be reviewed. In 1974, however, this Court introduced the requirement that, for a writ of error to issue, the remedy by way of appeal had to be inadequate. This requirement provides the touchstone for our adaptation of the writ of error as the procedural device for invoking the collateral order doctrine.[9]

Under the writ of error procedure, a party aggrieved by a trial court's interlocutory order arguably reviewable under the doctrine will not be able to interrupt the trial court proceedings simply by filing a notice of appeal. Instead, the aggrieved party will have to apply to this Court for a writ of error, which will be issued or not in our discretion. If issued, the procedure thereafter, as Rule 12–503 says, will be the same as though a notice of appeal were filed on the date of issuance of the writ; only then may the aggrieved party obtain a stay pursuant to SCRA 1986, 1–062(G) (Repl.Pamp.1992), in the trial court's discretion and subject to review by this Court under SCRA 1986, 12–207 (Repl.Pamp.1992).

We recognize that this use of the writ of error procedure is not the same as the use contemplated when the writ of error was originally incorporated into New Mexico law. It is not clear exactly what was intended by the 1974 amendment to our appellate rules when this Court changed the rule to make a writ of error available only when review by appeal was inadequate, though it seems clear that *some* difference was contemplated between the circumstances under which review could be obtained by a writ of error and those for obtaining review by appeal. It is also clear that the writ of error procedure has fallen into almost complete disuse and is now

---

**9.** By adopting the collateral order doctrine as originally formulated by the United States Supreme Court, we do not imply that we necessarily adopt, in advance, all of the rulings made by that Court since *Cohen* concerning those orders which are and those which are not reviewable under the doctrine. While we embrace the guidelines and criteria developed by the Supreme Court in its various applications of the doctrine, we do not commit ourselves to accepting or rejecting reviewability of a particular kind of order that the Supreme Court has considered in its own administration of the doctrine (unless, of course, the issue is one of federal law, as it is in this case). We remain free to apply the doctrine as we deem appropriate in future cases. *Cf. Lowery v. Atterbury*, 113 N.M. 71, 76 n. 2, 823 P.2d 313, 316 n. 2 (1992) (federal cases regarding dismissal under Fed. R.Civ.P. 41(b) are persuasive, but not binding, authority when considering dismissal under similarly worded New Mexico rule, SCRA 1986, 1–041(B)).

largely a dead letter. The Clerk of this Court informs us that, on average, about one application per year is filed for a writ of error, usually by an inmate at the state penitentiary seeking to exhaust every conceivable avenue of relief from his or her conviction. We could allow the writ of error to lie moribund in our Constitution, in the statutes, and in our rules; but we see no reason not to adapt it to a new role and not to make use of it in implementing a doctrine of review that has much to commend it but that, absent scrutiny of the circumstances under which it can be invoked, might easily be abused.

Other possible methods of implementing the collateral order doctrine could achieve the same kind of scrutiny. One such method might be the granting of what has come to be known as a "writ of superintending control," issued pursuant to this Court's original jurisdiction under Article VI, Section 3, of the Constitution. *See generally* Richard C. Bosson & Steven K. Sanders, *The Writ of Prohibition in New Mexico*, 5 N.M.L.Rev. 91, 121–28 (1974). The Supreme Court of Oklahoma in a recent case, *McLin v. Trimble*, 795 P.2d 1035 (Okla.1990), granted review of a trial court's denial of qualified immunity by exercising its original jurisdiction and issuing a writ of prohibition, since that state's appellate procedures did not permit an appeal from the trial court's interlocutory order.[10]

However, we do not deem an exercise of our power of superintending control to be as appropriate a means for implementation of the collateral order doctrine as issuance of a writ of error. As phrased in our cases, a writ of superintending control issues when "the remedy by appeal seems wholly inadequate" or when "otherwise necessary to prevent irreparable mischief, great, extraordinary, or exceptional hardship; costly delays and unusual burdens of expense." *State ex rel. Transcontinental Bus Serv., Inc. v. Carmody*, 53 N.M. 367, 378, 208 P.2d 1073, 1080 (1949).[11] Other criteria for issuance of the writ include consideration of a party's "fundamental rights," *Albuquerque Gas & Electric Co. v. Curtis*, 43 N.M. 234, 237, 89 P.2d 615, 616 (1939); "the public interest," *State ex rel. State Tax Commission v. First Judicial District Court*, 69 N.M. 295, 297–98, 366 P.2d 143, 145 (1961); and an "erroneous, arbitrary, and tyrannical" order by a lower court, *State v. Zinn*, 80 N.M. 710, 712, 460 P.2d 240, 242 (1969). Although in a particular case an interlocutory order for which review is appropriate under the collateral order doctrine might fall within one or more of these criteria, in general we believe it preferable to reserve issuance of a writ of superintending control in a specific case to categories of cases like those just mentioned, and to designate a more general method of review for cases properly invoking the collateral order doctrine. Our designation of the writ of error for this purpose in itself constitutes an exercise of our power of superintending control under the Constitution. *See Albuquerque Gas & Elec. Co. v. Curtis*, 43 N.M. at 237, 89 P.2d at 616 (quoting appellant's brief to the effect that tribunals having authority to exercise the power of superintending control "possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted.").

**10.** The court in *McLin* believed that it was bound by federal law, as enunciated in *Mitchell v. Forsyth*, to afford the defendants review of the trial court's denial of immunity, notwithstanding the rule in Oklahoma that appellate jurisdiction did not lie to review an order denying summary judgment. The court felt obliged, under the Supremacy Clause of the United States Constitution, to provide the same appellate-court review of a denial of qualified immunity as would have been available in a federal court adjudicating this issue of federal law. *McLin*, 795 P.2d at 1037–40. We do not rest our holding in this case—that the trial court's denial of qualified immunity is reviewable—on the Supremacy Clause; rather, we adopt the Supreme Court's collateral order doctrine as a matter of sound judicial administration, the salutary effects of which are not limited to the cases involving federally created claims or defenses.

**11.** *See also, e.g., State ex rel. DuBois v. Ryan*, 85 N.M. 575, 577, 514 P.2d 851, 853 (1973); *State ex rel. Anaya v. Scarborough*, 75 N.M. 702, 705–06, 410 P.2d 732, 734–35 (1966); *Montoya v. McManus*, 68 N.M. 381, 392, 362 P.2d 771, 778–79 (1961).

In prescribing the writ of error as the appropriate means for invoking the collateral order doctrine, we distinguish that method of review from an interlocutory appeal under NMSA 1978, Section 39-3-4 (paraphrased in footnote 3). Defendants in this case requested the trial court to certify for interlocutory appeal its order denying summary judgment; the court refused. In so acting, the court was probably correct. As the *Wright & Miller* treatise points out, the federal interlocutory appeal statute, 28 U.S.C. § 1292(b) (1988),

> has not supplanted collateral order appeals for several reasons. The more truly collateral an order is, the less likely it is to involve a controlling question of law within the meaning of § 1292(b), and the less likely it is that an immediate appeal will materially advance ultimate termination of the litigation.

15A Wright et al., *supra*, § 3911, at 369. In many cases, the right irretrievably lost by an interlocutory order which could not be effectively reviewed on appeal of the final judgment might have nothing to do with the merits of the litigation, and restoration of that right by review under the collateral order doctrine might have no effect at all on advancing the ultimate termination of the litigation.

 Not surprisingly, defendants did not apply to this Court for a writ of error. Nevertheless, in their briefs they requested that, if we deemed applicable or preferable a procedure other than a straightforward appeal, we treat their notice of appeal as an application to invoke such other procedure. Even had defendants not made this request, we would not be inclined to refuse to consider their appeal on the ground that they had employed the wrong procedure, when the procedure to be followed was not even announced until today. We have therefore entertained defendants' request for review of the trial court's denial of qualified immunity.

We have already noted plaintiff's concession that the court's order was erroneous insofar as it refused to grant qualified immunity on plaintiff's due-process claim. We now consider defendants' principal claim on the merits of this appeal—that the trial court erred in refusing them qualified immunity from plaintiff's First Amendment claim.

## V. QUALIFIED IMMUNITY AS TO PLAINTIFF'S FIRST AMENDMENT CLAIM

We begin by reviewing the operative facts. Plaintiff addressed defendant school board members in March 1987, questioning their proposal not to make up the three missed school days at Carroll Elementary School, where she was principal, and their commitment to quality education. The parties disagree over the tone of plaintiff's speech and her demeanor in making it—whether it was professional or unprofessional, appropriate or inappropriate—but there is no suggestion that plaintiff engaged in vituperation, vilification, or personal attacks. Three of the defendants admitted in the trial court, and admit here, that they based their decision not to renew her contract at least in part on her conduct at the meeting.[12] By "conduct" we take it that defendants mean the contents of her speech and how she made it; no one suggests that she otherwise acted objectionably at the meeting.

On these facts, again accepting as true plaintiff's version and defendants' admission that they based their decision at least in part on plaintiff's speech, we cannot see how defendants' decision not to rehire plaintiff can be characterized as anything other than an infringement of her clearly established right to address the Board at a public meeting on an issue of public concern.

---

**12.** The fourth defendant, Louis Marquez, denied that he considered plaintiff's behavior at the meeting in deciding not to rehire her. Marquez was not a member of the Board at the time of, and was not present during, the meeting. The parties have not raised any issue as to Marquez's entitlement to qualified immunity even if the other defendants are found not so entitled, so we make no ruling on this possible issue; we merely bring it to the attention of the trial court for consideration on remand, under the standards reviewed in this opinion.

In *Gomez v. Board of Education,* 85 N.M. 708, 516 P.2d 679 (1973), we quoted at length from two of the Supreme Court's leading cases in this area, *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). These cases clearly establish that an educator's employment may not be terminated by reason of her exercise of her constitutional right to speak freely on an issue of public concern. The critical part of our quotation from *Perry* reads:

> "For at least a quarter century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not act. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech....
>
> . . . .
>
> ... [T]wice before, this Court has specifically held that the nonrenewal of a non-tenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights....
>
> . . . .
>
> ... [T]his Court has held that a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment. [citing *Pickering* ]"

*Gomez,* 85 N.M. at 712–13, 516 P.2d at 683–84 (quoting *Perry,* 408 U.S. at 597–98, 92 S.Ct. at 2697–98).

We also quoted from *Pickering:*

> "To the extent that the Illinois Supreme Court's opinion [there under review] may be read to suggest that teachers may constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work, it proceeds on a premise that has been unequivocally rejected in numerous prior decisions of this Court."

*Id.* 85 N.M. at 713, 516 P.2d at 684 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734).

We went on to hold in *Gomez* that the plaintiff's complaint stated a claim upon which relief could be granted under § 1983,[13] but we recognized that the defense of qualified immunity (under the now discarded, pre-*Harlow* standard of subjective good faith) might be available to the defendants in a trial on the merits. *Id.* 85 N.M. at 716, 516 P.2d at 687.

*Gomez* is not the only New Mexico case recognizing an educator's constitutional right to address his or her superiors on a matter of public concern. In *Lux v. Board of Regents,* 95 N.M. 361, 368, 622 P.2d 266, 273 (Ct.App.1980), *cert. denied,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981), our Court of Appeals quoted from *Perry* and cited *Pickering* for the proposition that an educator's comments will be accorded constitutional protection if they relate to matters of legitimate public concern.[14]

We therefore take it as settled, in New Mexico and throughout the nation, that a public employee such as plaintiff has the right to speak on a matter of public concern. Finding that plaintiff had this clearly established right, however, does not quite dispose of the qualified-immunity issue in this case, because in order to determine whether defendants unconstitutionally infringed her right to speak through their decision not to rehire her, it may be

---

**13.** The plaintiff was a school bus operator whose contract was not renewed by the defendant school board because of plaintiff's participation in an election contest against the defendants.

**14.** The court held, however, that the educator's comments in that case were not made to the public and for the most part constituted "vituperation and personal vilification" of the school's administration, so that the plaintiff failed to establish a deprivation of his protected interest in free speech. *Id.*

necessary to engage in the so-called *"Pickering* balancing" approach. This phrase stems from the Supreme Court's statement in *Pickering* that to determine whether a teacher's freedom of speech has been infringed it is necessary "to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568, 88 S.Ct. at 1734.

In *Jacobs v. Stratton,* 94 N.M. 665, 667–68, 615 P.2d 982, 984–85 (1980) (*Jacobs I*), we recognized the necessity of conducting the *Pickering* balancing inquiry in a Section 1983 case involving a claimed deprivation of freedom of speech. We said:

> This is to be determined from an analysis of whether [the plaintiff's] statements were directed at persons with whom he would normally be in day to day contact so as to impair a close working relationship; whether the statements were detrimental only to the interests of the administration rather than the school itself; and whether the statements were directed toward matters of legitimate public concern upon which any citizen must be allowed to comment.

*Id.* 94 N.M. at 668, 615 P.2d at 985 (citing *Pickering,* 391 U.S. at 569–75, 88 S.Ct. at 1735–38).

*Jacobs I* was followed by *Jacobs v. Meister,* 108 N.M. 488, 775 P.2d 254 (Ct.App.), *cert. denied,* 108 N.M. 582, 775 P.2d 1299 (1989) (*Jacobs II*), an opinion of our Court of Appeals following retrial after the remand in *Jacobs I.* In *Jacobs II,* the court discussed the evolution of the *Pickering* balancing approach, as first articulated in *Pickering* and later developed in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). As summarized by the Court of Appeals, the approach requires "weighing the needs of the government as an employer against the public interest in an employee's speech, to determine whether the speech is protected by the first amendment." *Jacobs II,* 108 N.M. at 491, 775 P.2d at 257.

The defendants seize on the necessity for performing a *Pickering* balance to determine whether the First Amendment has been violated, pointing out that in *Connick* the Supreme Court found no violation when the employer reasonably believed that the employee's speech (a questionnaire distributed to coworkers in the employee's office) "would disrupt the office, undermine [the employer's] authority, and destroy close working relationships." *Connick,* 461 U.S. at 154, 103 S.Ct. at 1694. The defendant school board members similarly argue that plaintiff's speech at the March 1987 meeting, made in the presence of other school district employees, tended to undermine the Board's authority, disrupt working relationships, and encourage disloyalty to the Board's policies. They rely on several cases discussing the *Pickering* balance, including especially *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), in which the Supreme Court recognized

> as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Id.* at 388, 107 S.Ct. at 2899 (citing *Pickering,* 391 U.S. at 570–73, 88 S.Ct. at 1735–37).

The impact of a *Pickering* balancing on a *Harlow* pretrial determination of qualified immunity in a Section 1983 case for violation of a public employee's First Amendment rights has been recognized by the United States Court of Appeals for the Tenth Circuit as a very difficult problem. "A simple black letter rule is not possible." *Melton v. City of Oklahoma City,* 879 F.2d 706, 728 (10th Cir.1989), *vacated in part,* 928 F.2d 920, *cert. denied,* — U.S. ——, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991); *see also Schalk v. Gallemore,* 906 F.2d 491, 499 (10th Cir.1990). Defendants' argument, based on these and other federal cases, is that the outcome of a *Pickering*

balancing is so fact-specific that it is virtually impossible for a court to hold that any reasonable public official would have known that terminating an employee because of the employee's speech was an invasion of the employee's rights and was therefore a violation of "clearly established law" in the particularized sense required by *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").[15]

Our response to this argument is similar to the Tenth Circuit's in *Melton:*

"If we accepted defendants' argument . . ., we essentially would be holding that public employees can never maintain [an] action alleging retaliation for exercise of their first amendment rights because adjudicating these claims requires particularized balancing. We decline to adopt a rule that would effectively eviscerate whistleblower [or, in this case, publicly critical speech] protection for public employees."

*Melton*, 879 F.2d at 728 (quoting *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1408 (9th Cir.1988)).

Although in another case the intertwinement of a *Pickering* balancing and the *Anderson* particularized-facts requirement might present a Gordian knot that would be practically impossible to cut, we believe that this case presents no such difficulty. Here, any tendency of plaintiff's speech to impair discipline by superiors or harmony among coworkers, or otherwise to interfere with the operation of the school district, is not apparent from the facts that appear in this record on summary judgment. *Cf. Schalk v. Gallemore*, 906 F.2d at 496 ("While these arguments have superficial appeal, [the defendant] submitted no actual evidence of any disruptive confronta-

tions."). Although the parties have offered various characterizations of the way in which plaintiff delivered her remarks, we accept, as we have said, plaintiff's version on summary judgment. There is nothing in the record but speculation to support defendants' assertions that plaintiff's speech undermined the Board's authority, chilled her relations with the Board and coworkers, or otherwise impeded the efficient functioning of the school district. Because defendants failed to produce evidence of any adverse effects of plaintiff's speech with their motion for summary judgment, they must now proceed to trial and there submit any relevant evidence of how their interests outweighed plaintiff's interest.

 In making this last observation, we recognize that our ruling that defendants do not enjoy qualified immunity from suit on plaintiff's First Amendment claim might be taken as declaring the law of the case governing the trial on the First Amendment issue. We believe that no such issue preclusion should flow from our ruling in this case. When a trial court grants summary judgment to public officials, holding them immune from suit, or when, as here on plaintiff's due-process claim, an appellate court reverses a trial court's refusal to grant qualified immunity, that action adjudicates the defendants' nonliability for their conduct and, indeed, grants them immunity from continuation of the lawsuit. However, when, as here on plaintiff's First Amendment claim, summary judgment is denied and that denial is affirmed, the courts (trial and appellate) have only adjudicated that the defendants are not entitled, as a matter of law, to immunity from suit. Such an adjudication does not determine that defendants *are liable*—a determination that, if made, would be binding as the law of the case. Establishing the defendants' liability or nonliability must await the outcome of the

---

**15.** The Court in *Anderson* continued: "This is not to say that an official action is protected by qualified immunity unless the very action in

question has previously been held unlawful, but it is to say that in the light of pre-existing law

trial that a denial of summary judgment entails.[16]

In short, we do not hold as a matter of law that defendants are liable. We hold only that they are not entitled to pretrial immunity from suit as contemplated by *Harlow v. Fitzgerald* and *Mitchell v. Forsyth.*

The district court's order denying summary judgment is affirmed insofar as it relates to plaintiff's First Amendment claim; the order is reversed insofar as it relates to her claim that her entitlement to continuation of her employment was denied without due process of law. No costs are awarded.

IT IS SO ORDERED.

FRANCHINI and FROST, JJ., concur.

RANSOM, C.J., specially concurring.

BACA, J., specially concurring.

## APPENDIX: HISTORY OF THE WRIT OF ERROR IN NEW MEXICO

The writ of error is one of several methods of appellate review and is derived from the common law. *Armijo v. Neher,* 11 N.M. 354, 357–58, 68 P. 914, 916 (1902). Ordinarily, the writ is directed by an appellate court to a lower court, commanding the lower court to send the record of an action to the appellate court for the purpose of correcting an alleged error in the proceedings. 4 C.J.S. *Appeal & Error* § 9 (1957). Originally, writs of error were only available to review proceedings at law, whereas appeals were only available to review proceedings in equity. *See* 4 Am. Jur.2d *Appeal & Error* § 2 (1962).

Although our Constitution provides for writs of error, their use long antedates adoption of the Constitution in 1911. The Kearny Code contained references to the writ, as did early territorial statutes and the Organic Act of the territory.[1] In 1880, the territorial Supreme Court held that the law of the territory prohibited use of writs of error in equity cases, stating "a writ of error does not lie in chancery cases." *Kidder v. Bennett,* 2 N.M. 37, 39 (1880).

In response to *Kidder,* the territorial legislature enacted a statute authorizing appeals and writs of error in all cases, either at law or in equity. *Farish v. New Mexico Mining Co.,* 5 N.M. 234, 236, 21 P. 82, 83 (1889) (referring to 1880 N.M. Laws, ch. 10, § 1). In 1891, however, the territorial legislature returned to the law-equity distinction between writs of error and appeals,[2] and the Supreme Court held that by the 1891 Act the legislature had intended to

the unlawfulness must be apparent." *Id.* (citation omitted).

**16.** At the trial, the court must consider all the facts relating to the content of plaintiff's speech, the manner of its delivery, its effect on those who heard it, its tendency (if any) to disrupt efficient operation of the school administration, and all other factors in the *Pickering* balance. Although this Court in *Jacobs I* stated that the jury must be given an instruction on the *Pickering* balancing test, we note the apparent consensus in the federal courts that the balancing process is an inquiry of law for the court, not a factual issue for the jury. *See Fyfe v. Curlee,* 902 F.2d 401, 405 (5th Cir.) (balancing is to be conducted by the court as a matter of law, not fact), *cert. denied,* 498 U.S. 940, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990); *Hall v. Ford,* 856 F.2d 255, 258 (D.C.Cir.1988) (balance between interests of employee as citizen in commenting upon matters of public interest and interests of state as employer in promoting efficiency of its services to public is question of law for court to resolve); *Joyner v. Lancaster,* 815 F.2d 20, 23 (4th Cir.) (weighing of *Pickering* balance is question of law for court, not question of fact for resolution by fact finder), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987). Accordingly, after the proofs are in and the facts established, the court must decide the First Amendment issue as a matter of law, perhaps on a motion (or cross-motions) for a directed verdict, perhaps by awaiting the results of the jury's deliberations on any questions of fact (and conceivably obtaining answers to such questions through special interrogatories to the jury under SCRA, 1–049 (Repl.Pamp.1992)). The intimation in *Jacobs I* that this question—a question of federal law in a case arising under § 1983—should be submitted to the jury is disapproved.

**1.** *See* Kearny Code, *Courts & Judicial Powers,* §§ 13, 14, 17 (1846); Compiled Laws of 1865, ch. 16, §§ 6, 7, 9; Organic Act, ch. 49, § 10, 9 Stat. 446 (1850).

**2.** 1891 N.M. Laws, ch. 66, § 5.

limit review in common law cases to writs of error. *Atchison, T. & S.F.R.R. v. Martin,* 7 N.M. 158, 161, 34 P. 536, 536 (1893), *aff'd on other grounds,* 166 U.S. 399, 17 S.Ct. 603, 41 L.Ed. 1051 (1897). Then, in 1897, the territorial legislature again changed the method of appellate review by abolishing the distinction between an action at law and an equitable action and by authorizing a party aggrieved by a final judgment or decision either to take an appeal or to sue out a writ of error, at the party's election.[3] Thereafter and until 1915, appeals and writs of error were provided for in the same section of the law, "each of equal efficacy." *See In re Morrow's Will,* 41 N.M. 117, 122, 64 P.2d 1300, 1303 (1937).

In 1915, the legislature amended the statutes governing appellate procedure to provide for writs of error and appeals in separate sections.[4] Those sections were the predecessors to today's statutes governing appeals and writs of error,[5] although the legislature made minor changes in 1917 and 1927.[6] This Court later rejected an argument that the 1927 version of the statute restricted issuance of writs of error to cases at law and held that review by writ of error was coextensive with review by appeal. *Milosevich v. Board of County Comm'rs,* 46 N.M. 234, 235–37, 126 P.2d 298, 299–300 (1942). The 1927 version was repromulgated by the legislature with a few changes in the 1966 recodification of statutes relating to various aspects of procedure,[7] and the 1966 writ of error statute remains in effect today as Section 39–3–5.

The history of our appellate rule relating to writs of error is not as long as that of the statute, though it does go back a good many years. The current rule, Rule 12–503, is essentially the same as Supreme Court Rule 10, promulgated on April 1, 1974, which amended the earlier version of the rule to require a showing that the remedy by way of appeal was inadequate.[8] The earlier version, Supreme Court Rule 4, originated in 1928 and was patterned after Section 3 of the 1915 Laws. Neither the early rule nor the statute from which it was taken distinguished between the circumstances in which an appeal could be taken or a writ of error applied for. In 1974, this Court, in interpreting the appellate rules in effect prior to April 1, 1974, ruled that there was no difference in the degree of finality of judgments that could be reviewed on appeal and those reviewable by writ of error. *Angel v. Widle,* 86 N.M. 442, 443, 525 P.2d 369, 370 (1974). It thus appears that the 1974 amendment was intended to expand the scope of review under a writ of error by making such review available in cases in which the remedy by appeal was inadequate.

RANSOM, Chief Justice (specially concurring).

I concur in the foregoing opinion, except for the direction contained in footnote 16 that it is not the jury but is the court that is to decide the factual issue of whether, under the circumstances within the community of Bernalillo, the public teacher's interest in speaking out was greater or lesser than that of the Board of Education in promoting the efficiency of public school services. The teacher will adduce evidence to explain and justify her exercise of the right to speak, to characterize the tone of her speech and her demeanor in making it. If the court finds as a matter of law that the speech fell within the protection of the First Amendment, the school board will go forward with evidence from which the fact-finder will be asked to infer that the teach-

**3.** 1897 N.M. Laws, ch. 73, §§ 1, 161.

**4.** 1915 N.M. Laws, ch. 77, §§ 1, 3.

**5.** Section 1 of the 1915 Laws became what is now Section 39–3–2, and Section 3 became what is now Section 39–3–5.

**6.** 1917 N.M. Laws, ch. 43, §§ 1, 2, 4; 1927 N.M. Laws, ch. 93, § 2.

**7.** 1966 N.M. Laws, ch. 28, § 37.

**8.** N.M.Sup.Ct.R. 10 (1974) (amending N.M.Sup.Ct.R. 6 (1949) & (1936)).

er's speech at the March 1987 meeting, made in the presence of other school district employees, tended to undermine the board's authority, disrupt working relationships, and encourage disloyalty to the board's policies. That the balancing of such evidence is fact specific is conceded without debate. That the finding will be dispositive of the cause of action is likewise conceded. The factfinder will not decide the policy or law of balancing, it will decide the balance in fact, without the effect of precedent in law.

I recognize that interlocutory constitutional issues of fact that are collateral to and perhaps avert a decision on the merits may be resolved by the court at both trial and appellate levels. *See Work v. State*, 111 N.M. 145, 150–51, 803 P.2d 234, 239–40 (1990) (Ransom, J., specially concurring) (court to decide ultimate question of voluntariness of confession; significance of facts in speedy trial claims is for the court). However, when a balancing of the evidence effectively decides *ultimate issues of fact* that are dispositive of the case, such as whether violation of a party's civil rights did or did not occur so as to preclude or give rise to immunity from liability for that wrong, then a party's right to trial by jury demands resolution by a jury. I see no good reason that, in a Section 1983 action at law, dispositive fact issues of a constitutional dimension should be distinguishable from dispositive fact issues arising under statute or the common law.

In footnote 16, it is noted that there is an "apparent consensus in the federal courts that the balancing process is an inquiry of law for the court, not a factual issue for the jury." From my reading of the seminal federal case, *Connick v. Myers*, it was not the balancing process but rather the threshold determination of protected speech that was a question of law for the court. Because *Connick* involved a bench trial, there was no discussion as to who should balance the interests of the parties. The Supreme Court did decide that the

court was to determine as a matter of law whether the speech was protected. Subsequent cases (cited in footnote 16) have made unfortunate footnote references to *Connick* as having decided that a court, rather than a jury, must do the balancing test.

Here, what is equally persuasive to me is that the question of who is to decide the case factually is not one of federal substantive law. It is a question of procedural law and state constitutional law governing the process of factfinding. That the balancing test must be done is a matter of federal substantive law; whether the court or jury resolves the facts is not. I believe we should follow *Adams v. United Steelworkers of America, AFL–CIO*, 97 N.M. 369, 372, 640 P.2d 475, 478 (1982), that "[w]e must apply federal substantive law but state procedural law." In New Mexico, it has been decided quite properly that the determinative factual issues should be submitted to the jury. *Jacobs v. Stratton*, 94 N.M. 665, 667–68, 615 P.2d 982, 984–85 (1980).

BACA, Justice (Specially Concurring).

While I agree with much of what the majority espouses today and join the Court's opinion, I write separately to emphasize the extremely limited reach of the collateral order doctrine. I do so in the hope of stemming the tide of appeals that I anticipate will flood this court in the wake of today's opinion from those parties who either misread the opinion or ignore our admonitions as to the narrowness of the collateral order doctrine.

As today's opinion recognizes, except under very limited circumstances, we lack "jurisdiction to review an order or decision that is not final." Maj. at 612, 845 P.2d at 135 (citing NMSA 1978, § 39–3–2 (Repl. Pamp.1991)). The purposes underlying this requirement of finality have been reiterated in numerous cases:

> [The rule] emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to de-

cide the many questions of law and fact that occur in the course of trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 [101 S.Ct. 669, 673, 66 L.Ed.2d 571] (1981), quoting *Cobbledick v. United States*, 309 U.S. 323, 325 [60 S.Ct. 540, 541, 84 L.Ed. 783] (1940).

*Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–22 n. 3, 108 S.Ct. 1945, 1949 n. 3, 100 L.Ed.2d 517 (1988) (alterations in original). In addition, the finality requirement fosters judicial economy by eliminating the delays caused by interlocutory appeals. *Catlin v. United States*, 324 U.S. 229, 233–34, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945).

In accordance with the purposes underlying the finality requirement, the collateral order doctrine exempts only a "small class" of decisions from the final-judgment rule. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). To fall within the "small class" of decisions in which the collateral order rule may be appropriately invoked, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978). The doctrine must be narrowly construed, " 'lest the exception swallow the basic finality requirement and swamp dockets with collateral order appeals.' " Maj. at 613, 845 P.2d at 136 (quoting 15A Charles A. Wright et al., *Federal Practice & Procedure* § 3911.2, at 353 (2d ed. 1992)).

Today's opinion recognizes that the heart of the collateral order doctrine is "the requirement that the order sought to be reviewed implicates rights that will be irretrievably lost, absent immediate review and regardless of the outcome of an appeal from the final judgment." Maj. at 616, 845 P.2d at 139. While I agree with this assessment, I wish to emphasize that the second requirement of the doctrine, *i.e.*, that the order appealed must be collateral to the merits of the action, also narrows the doctrine. "The decision offered for review must not be a step toward a final judgment in which it will merge, since the purpose of the final judgment rule is to combine in one appeal all questions 'that effectively may be reviewed if and when a final judgment results.' " Wright et al., *supra*, § 3911.2, at 379 (quoting *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225). The narrowness of the collateral order doctrine forecloses its use as a supplementary avenue of appeal in all but the most limited circumstances. As Judge Aldisert has so aptly noted,

> We have detected what appears to be an irresistible impulse on the part of appellants to invoke the "collateral order" doctrine whenever the question of appealability arises. Were we to accept even a small percentage of these sometime exotic invocations, this court would undoubtedly find itself reviewing more "collateral" than "final" orders.

*Borden Co. v. Sylk*, 410 F.2d 843, 845–46 (3d Cir.1969).

Moreover, our choice of the writ of error as the procedural avenue to raise appeals of collateral orders further constricts the application of the doctrine. As our opinion recognizes, a writ of error will issue only if the movant shows that "the remedy by way of appeal is inadequate." SCRA 1986, 12–503 (Repl.Pamp.1992). This requirement supplements the collateral order doctrine's requirement that the order is "effectively unreviewable on appeal from a final

judgment." In addition, a writ of error "will be issued or not in our discretion." Maj. at 617, 845 P.2d at 140. Thus, our adoption of the writ of error as the procedural device to implement the collateral order doctrine effectively limits its applicability.

In summary, the collateral order doctrine must be narrowly construed to discourage piecemeal appeals while fostering judicial economy. Because I read the Court's opinion today to be extremely narrow and having application in only a "small class" of cases, I concur.