SHARON SERPICO, Petitioner-Appellee, v. JAMES URSO, Respondent-Appellant.

First District (4th Division)   No. 83—1566

Opinion filed September 20, 1984.

Edward D. Rosenberg, Steven R. Lake, Mary D. Paulsen, and Alan J. Toback, all of Lake, Rosenberg & Associates, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Robert F. Cleary, Catherine Quattrocchi, and Sean McDermott, Assistant State's Attorneys, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Prior to pleading guilty, defendant, who first appeared *pro se* in response to a summons and complaint charging him with the paternity of plaintiff's child, was not fully informed of certain statutorily

prescribed rights as required under section 5 of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1355). Alleging the trial court's failure to comply with the statute, defendant petitioned to vacate his guilty plea. The court, denying the petition, found defendant to be the father of plaintiff's child and, after a support hearing, ordered him to pay $30 per week child support.

Defendant appeals from the denial of his petition and from the order for child support. He also claims as error the trial court's sustention of the State's objection to calling the prosecuting attorney as an occurrence witness at the hearing on the petition.

We vacate in part, affirm in part, and remand.

Defendant, James Urso, was served with a summons and complaint charging him with the paternity of a child born to plaintiff, Sharon Serpico. On October 6, 1982, defendant appeared *pro se* before the bench in the circuit court of Cook County in response to the summons. He alleges that while waiting for his case to be called between 9 a.m. and 2 p.m., he consumed at least five ounces of whiskey and that as a result thereof he was unable to comprehend either the nature of the proceedings or of the admonitions he received, as mandated by section 5 of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1355).

A dispute exists as to whether defendant was informed of any of these rights prior to the court's asking for his plea. The State contends that upon entering the courtroom, defendant was handed a sheet of paper containing some, though concededly not all, of the rights set forth in section 5 of the Act. Defendant, on the other hand, claims that he never received anything advising him of his rights prior to the court's asking him if he was "ready to admit or deny being the father" of plaintiff's child.

It is undisputed that defendant, in response to the court's question, admitted paternity, whereupon the trial court made a "legal finding" that defendant was the father of plaintiff's child. The court then asked defendant if he knew he had a right to a trial on the issue and to a blood test, to which defendant answered in the affirmative. The court then asked defendant if he was waiving his rights and admitting paternity, and defendant answered, "Yes."

Defendant subsequently obtained counsel and filed a petition to vacate his guilty plea and to grant him leave to file a jury demand. The petition alleged that defendant was intoxicated at the time of the October 6 hearing and that he was therefore incapable of understanding and does not remember receiving any admonition of his rights given pursuant to section 5 of the Paternity Act. It further alleges

that he was not advised of any of his rights under the Act until after his guilty plea was entered and that when he was advised, it was as to fewer than all of the prescribed rights.

A hearing was held on the petition to vacate on December 2, 1982. Defendant called, as his first witness, Assistant State's Attorney Cynthia Brown. Ms. Brown was the prosecuting attorney on the case and objected to being called as a witness. The court asked both parties to submit briefs on the issue of whether Ms. Brown could be called to testify by the defense, and the case was continued.

On January 31, 1983, the cause again came on for hearing. After arguments of counsel, the court sustained the State's objection to calling Ms. Brown as a witness. The hearing proceeded on the matters of fact raised in defendant's petition.

Defendant called Sharon Serpico as an adverse witness. She testified that on the day of the October 6 hearing, defendant drove her to and from the courthouse. She further testified that she had not smelled any alcohol on defendant's breath but that he had left the courtroom after telling her he was going to put money in the parking meter. She stated that she did not find his behavior odd in any way and that his driving on the way home from the hearing was fine.

Defendant testified on his own behalf. He testified that he had been drinking heavily prior to the hearing, and he denied ever having received any sheet of paper advising him of his rights. When examined on his understanding of the terms contained on the sheet of paper he allegedly received, defendant testified that he did not know the meaning of the terms "out of wedlock" or "the right to confront all witnesses" that may be brought against him. He further denied understanding the meaning of having a right to a blood test, what a jury trial was, or of being held responsible for the support of the child should he be found to be the father.

At the conclusion of the hearing, defendant's petition to vacate his guilty plea and for leave to file a jury demand was denied. A support hearing was held on May 24, 1983, at which time defendant amended and renewed his petition to vacate the plea of guilty entered October 6, 1982. The amended petition was denied. Following testimony by defendant and plaintiff, defendant was ordered to pay Sharon Serpico the sum of $30 per week child support. It is from the entry of this order and from the other adverse rulings entered in the course of these proceedings defendant now appeals.

On appeal, defendant contends that the trial court failed to advise him of certain statutory rights in compliance with section 5 of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1355). Section 5 reads in

pertinent part as follows:

> "*** Upon the first appearance of the accused, the Judge *shall fully advise* him of his rights to counsel and to a complete transcript of the proceedings in the cause. The judge *shall further inform* the defendant that he may plead not guilty, that if a blood test conclusively excludes him as a father he must be found not guilty, that he must be proven guilty by a preponderance of the evidence, that he has a right to a trial by jury in the cause, and that if he is proven to be the father of a child born out of wedlock he will be liable for the support, maintenance, education and welfare of the child until the child attains the age of 18, as well as the reasonable expenses of the mother during the period of her pregnancy, confinement and recovery. If the defendant desires counsel and has been unable to obtain same before the date upon which he appears, the court shall recess or continue the cause for a reasonable time to permit defendant to obtain counsel and consult with him *before pleading to the charge.* ***" (Emphasis added.)

The State claims that the trial court complied with section 5 on the grounds that (1) the word "shall" as it appears in the Act should be construed as merely directory rather than mandatory, and (2) even if construed as mandatory, the sheet of paper handed to defendant prior to hearing coupled with the court's admonitions substantially complied with the Act's requirements. We find no merit in either of these contentions.

Whether an enactment is directory or mandatory depends on the legislative intention, to be ascertained from the nature and object of the act and the consequences which would result from any given construction. (*Village of Mundelein v. Hartnett* (1983), 117 Ill. App. 3d 1011, 454 N.E.2d 29.) The general rules for the construction of statute as either mandatory or directory were set forth in *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332, 1335, as follows:

> "*** The use of the words 'shall' or 'must' is generally regarded as mandatory. However, the term 'shall' does not have a fixed or inflexible meaning. It can, in fact, be construed as meaning 'may,' depending on the legislative intent. However, '[w]here the word is employed with reference to any right or benefit to anyone, and the right or benefit depends upon giving a mandatory meaning to the word, it cannot be given a permissive meaning. ***' "

Thus, the word "shall" may be held to be merely directory only where

no advantage is lost, no right is destroyed, and no benefit is sacrificed, either to the public or to any individual. (*Clark v. Brown* (1970), 121 Ill. App. 2d 280, 257 N.E.2d 565.) Such is not the case in the present action.

In section 5 of the Paternity Act, the word "shall" is employed with reference to the defendant's *right* to counsel, to a complete transcript of the proceedings, to plead not guilty, to be proved guilty by a preponderance of evidence, and to a trial by jury. Because these rights depend on giving the word "shall" a mandatory construction, it cannot be given a merely directory meaning. It was therefore incumbent upon the trial court to "fully advise" defendant of these statutorily granted rights. To deprive him of such admonitions was error.

The State alternatively argues that even if the word "shall" as it appears in section 5 of the Paternity Act is given a mandatory construction, the trial court, by a combination of written and oral admonitions, substantially complied with the provision. The State supports its position with the "statement of rights" allegedly given to defendant and the report of proceedings from the October 6 hearing.

The "statement of rights" handed out by the trial court to defendant reads as follows:

"1. YOU ARE CHARGED with being the father of a child born out of wedlock. That is why you are in Court today.

2. YOU HAVE THE RIGHT to an attorney. If you cannot afford one, the Court will appoint a Public Defender for you.

3. YOU HAVE THE RIGHT to take a blood test; but the results may be used *for* or *against* you.

4. YOU HAVE THE RIGHT to a jury trial.

5. YOU HAVE THE RIGHT to confront all witnesses that may be brought against you.

6. IF YOU ARE FOUND to be the father of the child, you will be responsible for the support of the child until the child reaches the age of 18."

After defendant was allegedly handed this sheet, the proceedings, as documented in the report of proceedings upon which the State also relies as evidence that the trial court substantially complied with section 5, commenced as follows:

"Q. Mr. Urso did you read your rights?

A. Yes.

Q. Do you have any questions about your rights or our procedure?

A. No.

Q. Are you ready to admit or deny being the father?
A. I admit it.

\* \* \*

Q. I will make a legal finding that you are the father. Are you working?
A. Yes.
Q. As to whether or not you are the father.
A. Yes.
Q. And you have the right to a blood test?
A. Yes.
Q. And you are waiving your rights and admitting that you are the child's father?
A. Yes."

An examination of the combined admonitions set forth on the printed sheet and given to defendant verbally by the court reveals that defendant was never advised of his right to plead not guilty, of the necessity that he be proved guilty by a preponderance of the evidence, or of the fact that if the blood test excluded him as the father, he must be found not guilty. Neither was defendant advised of the total responsibility to plaintiff and plaintiff's child that attaches to a finding of guilt. Defendant was never asked if he desired counsel nor informed that the proceedings would recess if he desired to obtain counsel, which he subsequently did. Lastly, defendant was never informed that he had the right to a complete transcript of the proceedings. The State acknowledges the court's failure to advise defendant of these rights but claims that the court nevertheless made a "substantial and reasonable" effort to comply with the statutory provisions. The State asserts that the trial court's failure to advise the defendant "of a few rights" was not so substantial as to disadvantage this defendant.

■ The State's casual characterization of a defendant's right to plead not guilty, to be informed of the State's burden of proving him guilty by a preponderance of evidence, and to be informed of the full consequences attached to a guilty plea as merely "a few rights" is legally inappropriate. The omission to advise a defendant of these important rights, and the attempt by the State to minimize that omission is unacceptable to this court. On the facts before us, we cannot find that the trial court substantially complied with the mandate of section 5.

Defendant next claims as error the trial court's sustention of the State's objection to calling the prosecuting attorney as an occurrence witness. Defendant asserts that Ms. Brown, the assistant State's At-

torney, was competent to testify to defendant's intoxication and to the events and circumstances surrounding the purported admonitions given him. The State does not claim that Ms. Brown was incompetent to testify, but points out that there was at least one other witness competent to testify and that it was in the discretion of the trial court to decide whether Ms. Brown would be allowed to testify. The applicable law supports the State's position.

A trial court has wide discretion in refusing to permit attorneys to testify at a trial wherein they also serve as advocates, especially where there are other witnesses available. (*People v. Tate* (1978), 64 Ill. App. 3d 1, 380 N.E.2d 976.) Such testimony is allowed when the trial court, in its discretion, finds that it is necessary. (*People v. Jackson* (1982), 105 Ill. App. 3d 750, 433 N.E.2d 1385.) Because courts are especially reluctant, and rightfully so, to allow lawyers, including prosecuting attorneys, to be called as witnesses in trials in which they are advocates, a court may, without abusing its discretion, refuse to allow the defense to call as a witness the State's Attorney trying the case. (*People v. Gendron* (1968), 41 Ill. 2d 351, 243 N.E.2d 208, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179.) This is especially so where, as here, another witness is available to testify and could testify as easily as counsel. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

■ The able and concerned trial court, before ruling on the State's objection to defendant's calling the assistant State's Attorney as a witness, had both parties submit briefs on the issue. After reading the briefs and hearing argument of counsel, the trial court exercised its broad discretion and sustained the State's objection, no doubt having taken into account the necessity of counsel's testimony and the availability of other witnesses. Given the general disfavor with which calling a participating advocate to testify is viewed, and the wide discretion afforded the trial court regarding these matters, we will not disturb the trial court's ruling on the State's objection to calling Ms. Brown as a witness.

For all of the foregoing reasons, we vacate the orders of: October 6, 1982, finding defendant to be the father of plaintiff's child; December 2, 1982, denying defendant's petition to vacate his guilty plea; and May 25, 1983, denying defendant's motion to open the prior plea of guilty and ordering him to pay child support. We vacate in part the order of January 31, 1983, denying defendant's amended petition and petition to vacate the guilty plea and to grant him a trial by judge or jury.

We affirm the order entered January 31, 1983, to the extent that

it denies defendant the right to call Assistant State's Attorney Cynthia Brown as a witness and remand for a continuation of the proceedings.

Vacated in part, affirmed in part, and remanded.

JIGANTI and ROMITI, JJ., concur.