**GREATER ROCKFORD ENERGY
AND TECHNOLOGY CORP.,
et al., Plaintiffs,**

v.

**SHELL OIL COMPANY,
et al., Defendants.**

No. 90–3119.

United States District Court,
C.D. Illinois,
Springfield Division.

Oct. 28, 1991.

See also 138 F.R.D. 530.

---

Wendell W. Wright, Wright & Wright, Danville, Ill., Bob F. Wright, Domengeaux & Wright, Lafayette, La., Lloyd W. Gathings, Gathings & Davis, Birmingham, Ala., Gregg R. Potvin, Taylor, Thiemann & Aitken, Washington, D.C., Wayne M. Liao, Spiegel, Liao & Kagay, San Francisco, Cal., for plaintiffs.

Peter M. Sfikas, Peterson & Ross, Chicago, Ill., Carl D. Haggard, A.M. Minotti, Shell Oil Co., Houston, Tex., for defendant Shell Oil Co.

James C. Kearns, Edward M. Wagner, Heyl, Royster, Voelker & Allen, Urbana, Ill., John H. Stroh, Dan D. Sandman, Findlay, Ohio, Ronald Teeple, John Leonard, DeFrees & Fiske, Chicago, Ill., for defendant Marathon Petroleum Co.

Thomas A. Gottschalk, David A. Rammelt, Kirkland & Ellis, Chicago, Ill., Robert E. Gillespie, Hinshaw & Culbertson, Springfield, Ill., John Jenkins, Gunn & Hickman, Danville, Ill., Martin J. Keating, Gerard J. Carpency, Michael E. Rigney, J. Andrew Langan, Kirkland & Ellis, Chicago, Ill., Amy J. Berenson, Kirkland & Ellis, Washington, D.C., for defendant Amoco Oil Co.

Thomas W. Kelty, John H. Long, Pfeifer & Kelty, P.C., Springfield, Ill., Harry P. Davis, Jr., John E. Bailey, David L. Martindale, Houston, Tex., Joseph M. Burton, San Francisco, Cal., Keith E. Parks, Mark A. Cervenka, David L. Ream, Chevron Corp., Houston, Tex., for defendant Chevron U.S.A., Inc.

Gary R. Lietz, Flynn, Palmer, Tague & Lietz, Champaign, Ill., Otis Pratt Pearsall, Bruce R. Kelly, Robert C. Mason, Hughes, Hubbard & Reed, New York City, Donald A. Brigh, Dean M. Harris, Atlantic Richfield Co., Ronald C. Redcay, Hughes, Hubbard & Reed, Los Angeles, Cal., Philip H. Curtis, Arnold & Porter, New York City, for defendant Atlantic Richfield Co.

Joseph Dattilo, Cleveland, Ohio, for defendant B.P. America.

C.W. Dukes, David J. Ryan, Dukes, Martin, Helm & Ryan, Danville, Ill., H. Blair White, Nathan Eimer, Krista Edwards, Andrew G. Klevorn, Sidley & Austin, Thomas Bush, Jr., Saunders & Monroe, Chicago, Ill., for defendant Citgo Petroleum Corp.

Thomas Jackson, Jones, Day, Reavis & Pogue, Dallas, Tex., Larry Douglas, San Antonio, Tex., for defendant Diamond Shamrock R & M, Inc.

Robert G. Abrams, Joanne E. Caruso, Howrey & Simon, Washington, D.C., for defendant Exxon Co. USA

Patrick J. Ahern, Jeffery M. Cross, Ross & Hardies, Chicago, Ill., Charles F. Rice, Dennis Wilson, Mobil Oil Corp., New York City, for defendant Mobil Corp.

## OPINION

RICHARD MILLS, District Judge:

Antitrust case—17 Plaintiffs—11 Defendants—69 lawyers—and literally a half-ton of pleadings.

First of all, Plaintiffs' counsel accepted this case with a foreseeable conflict.

But Defendants waited until 3 years into this major antitrust action before moving to disqualify Plaintiffs' lead counsel (and his firm) on the grounds that Defendants intend to call him as a witness to give testimony that is prejudicial to his clients.

Motion denied.

## I. FACTS

Bob Wright is a senior partner for the firm of Domengeaux and Wright, counsel for Plaintiffs. Mr. Wright is also the president and 85% shareholder of Plaintiff Alpebo, Inc. Alpebo entered into a joint venture to produce ethanol with Shepherd Oil, Inc., and Celerol Oil and Gas Company. When the ethanol industry began to struggle, the Department of Agriculture decided to subsidize many of the grain-based ethanol producers. Alpebo, Shepherd, and Celerol were not subsidized, however, because their ethanol was not produced from grain.

In June of 1986, Alpebo, Shepherd and other firms filed a suit against the United States Secretary of Agriculture seeking a declaratory judgment and a permanent injunction which would require the Secretary of Agriculture to include the Plaintiffs in the subsidy program. In that action, Bob Wright appeared as attorney for Alpebo and Shepherd. In the complaint against the Secretary of Agriculture, the Plaintiffs asserted that they "will be irreparably injured as a result of the Secretary's decision to selectively subsidize only a part of the ethanol industry." Plaintiffs then stated: "This situation will exascerbate the economic plight the plaintiffs face and will increase the danger that the plaintiffs will be forced out of business." In September of 1986, the district court for the Western District of Louisiana granted summary judgment in favor of the Secretary of Agriculture. *Alpebo, Inc. v. Richard E. Lyng, U.S. Secretary of Agriculture,* No. 86–1431 (W.D.La., Ruling of Sept. 29, 1986).

Defendants in the instant case claim that they intend to call Mr. Wright as a witness to testify as to matters concerning the prior litigation with the Secretary of Agriculture. Specifically, Defendants claim they need Mr. Wright to testify to the validity of documents from the suit against the Secretary of Agriculture. Defendants further assert that Mr. Wright, as president and attorney for Alpebo, is in the best position to testify as to the prior suit and as to the financial and competitive situation of Alpebo.

It is the Defendants' contention that Wright's testimony will be prejudicial to the Plaintiffs and he should therefore be disqualified. In support of their motion, Defendants initially cited the ABA model code of professional responsibility. However, the applicable law is the Illinois rules of professional conduct which became effective in August of 1990. These rules are very similar to the ABA code. The pertinent section of the Illinois Rules of Professional Conduct is Rule 3.7 which reads as follows:

**Rule 3.7. Lawyer As Witness**

(b) If a lawyer knows or reasonably should know that the lawyer may be called as a witness, other than on behalf of a client, the lawyer may accept or continue representation until the lawyer knows or reasonably should know that the lawyer's testimony is or may be prejudicial to the client.

(c) Except as provided by Rule 1.7 or Rule 1.9 a lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm may be called as a witness.

Plaintiffs have offered several valid reasons why Mr. Wright should not be disqualified. First, they contend that the suit against the Secretary of Agriculture represented only one of the several reasons why their business failed. Thus, they argue Defendants may still be liable even if they were harmed by the actions of the Secretary of Agriculture. Second, Plaintiffs contend that Mr. Wright should not be disqualified because his testimony is not necessary. They contend that the information Defendants seek is available elsewhere.

On July 10, 1991, this Court entered an order requiring the parties to submit further briefs addressing the disqualification issue.

Plaintiffs' supplemental briefs argue that (1) Mr. Wright's testimony is not prejudicial to Plaintiffs since the failure of the businesses of the Plaintiffs who were parties to the suit against the Department of Agriculture could have multiple causes, (2) Mr. Wright is not a necessary witness since the evidence he could provide is available

from other sources (Plaintiffs point out that two other attorneys also represented the plaintiffs in the prior suit), (3) Mr. Wright is "the plaintiffs' attorney most intimately involved with every aspect of this case," and (4) Mr. Wright's firm is handling this case on a contingency basis and some Plaintiffs "may" be unable to go forward with this suit if they must retain new counsel.

Along with Plaintiffs' supplemental briefs, each and every Plaintiff has filed an affidavit stating that "[t]he continued presence of Bob F. Wright and his firm ... as lead counsel is indispensable [to the Plaintiff] in these proceedings" and "[w]ith full knowledge of the facts and circumstances as argued by the Defendants ... [Plaintiff] desires and consents to its continued representation by Bob F. Wright and [his firm]."

Defendants' supplemental brief urges that (1) testimony from Mr. Wright would have more impact than testimony from another source, (2) Defendants would be "irretrievably prejudiced" if precluded from offering Mr. Wright's "admissions," (3) the disqualification of Wright and his firm would not significantly affect Plaintiffs since other Plaintiffs' counsel have worked on this case, (4) Mr. Wright's disqualification would be consistent with the rules, and (5) Defendants' motion to disqualify is timely since they discussed the possible conflict with Mr. Wright on August 2, 1988 and filed their motion in March, 1991, soon after a complete record was assembled showing that Mr. Wright would be a material witness adverse to his clients.

## II. ANALYSIS

It is a hoary truism that, absent special circumstances, counsel should avoid appearing both as an advocate and as a witness. *United States v. Morris*, 714 F.2d 669, 671 (7th Cir.1983). "The Court's broad concern for the public confidence in the administration of justice often mandates that an attorney be disqualified." *United States v. Johnston*, 690 F.2d 638, 643 (7th Cir.1982). The *Morris* court identified several goals of not allowing an attorney to appear as a witness and an attorney. Those goals included eliminating the possibility that an attorney will not be a fully objective witness and reducing the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments. *Morris*, 714 F.2d at 671. Another concern is that an attorney-witness will be in a position to argue his own credibility to the jury. *Jones v. City of Chicago*, 610 F.Supp. 350, 357 (N.D.Ill. 1984). An attorney *may* be required to withdraw based on the mere appearance of a conflict of interest. *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 709 (7th Cir.1986).

However, motions to disqualify should be viewed with extreme caution because they can be used as a means of harassment. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir.1982). For example, in order to disqualify opposing counsel, a party must prove that his testimony will be prejudicial to his client. This finding of prejudice is more stringent than when the attorney is testifying on behalf of his client because lawyers may attempt to call opposing lawyers as witnesses in order to disqualify them. *Jones v. City of Chicago*, 610 F.Supp. at 360 n. 3.

It is significant that "the Code of Professional Responsibility is not binding on the courts. Instead, it provides guidelines for proper professional conduct and attorneys can be disciplined for failing to adhere to its requirements." *Cross v. American Country Ins. Co.*, 875 F.2d 625 (7th Cir.1989) (citations omitted). A district court has broad discretion in determining whether disqualification is required in a given case. *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir. 1986). "Application of the Rules varies depending on the circumstances of each individual case." *Sencon System, Inc. v. W.R. Bonsal Corp.*, 1988 WL 9130, *4, 1988 U.S. Lexis 990, *9 (N.D.Ill.1988) (citing *United States v. Johnston*, 690 F.2d 638, 642 (7th Cir.1982)). Disqualification separates a party from the counsel of his choice with immediate and measurable ef-

fect. *Freeman*, 689 F.2d at 719. "Moreover, it may be difficult, if not impossible, for a new attorney to master 'the nuances of the legal and factual matters' late in the litigation of a complex case. * * * Proof of the often subtle ramifications of an order disqualifying counsel may be impossible at times to adequately present." *Freeman*, 689 F.2d at 619–620.

Although Plaintiffs are correct that there may be multiple causes for a business failing, it is nonetheless apparent that evidence that certain Plaintiffs previously contended that policies adopted by the Department of Agriculture could cause their businesses to fail will be prejudicial to the Plaintiffs. The Court agrees with Defendants that disqualification would be consistent with the rules—it was imprudent of Mr. Wright to act as counsel in this case.

Plaintiffs' affidavits, as well as the advanced stage of this litigation, force this Court to disagree with Defendants' assertion that disqualification of Plaintiffs' lead counsel would not significantly affect Plaintiffs. The Seventh Circuit's cautions in *Freeman* apply fully to the situation at bar. The hardship caused by disqualification at a late stage of the proceedings is not controlling, however, where the potential need for counsel to testify should have been foreseen. *Jones v. City of Chicago*, 610 F.Supp. at 361. In a case such as this, a court may consider the competing interests involved in a disqualification motion in crafting its order. *See, Jones v. City of Chicago*, 610 F.Supp. at 363.

The Court also rejects Defendants' contention that their motion to disqualify was timely. Thirty-two months went by from the time Defendants raised the possible conflict with Mr. Wright to the time they made their motion to disqualify him. If Defendants thought it necessary to depose Mr. Wright and make a complete record before making their motion to disqualify, they should have brought this matter to the Court's attention much earlier so that Mr. Wright's deposition could be scheduled early on in the proceedings. Further, the Court notes that the principal bases advanced by Defendants for Mr. Wright's

disqualification, that damaging statements are contained in the pleadings of the suit against the Department of Agriculture and that Mr. Wright was the plaintiffs representative in that suit and president of Alpebo, were known to Defendants long ago.

The necessity of testimony and availability of other witnesses are often criteria used in determining whether an attorney must testify. *See, e.g., Serpico v. Urso*, 127 Ill.App.3d 667, 673, 82 Ill.Dec. 821, 469 N.E.2d 355 (4th Dist.1984); *People v. Jackson*, 105 Ill.App.3d 750, 61 Ill.Dec. 57, 433 N.E.2d 1385 (4th Dist.1982). The information concerning the suit against the Secretary of Agriculture may be available elsewhere. Information known to Mr. Wright as the president of Alpebo may well be unavailable from other sources. To the extent that "admissions" by Mr. Wright are not available from other sources, Defendants should not be precluded from submitting that evidence.

How that evidence can be presented to the jury needs not be decided at this time. Given that Plaintiffs argue against Mr. Wright's disqualification on the basis that the evidence is available through other sources, Plaintiffs should be willing to stipulate as to much of what Mr. Wright would testify to if he were put on the stand. The evidence Mr. Wright could provide from the witness stand may also be elicited from other witnesses. Of course, Plaintiffs' argument that the information possessed by Mr. Wright is available from other sources also shows there is no need for him to take the stand on Plaintiffs' behalf.

### III. CONCLUSION

In sum, both parties are at fault for creating this difficult situation. This is not a situation where Plaintiffs' counsel could not reasonably have foreseen that he would be called as a witness, nor is it a situation where Defendants moved to disqualify, or even brought the potential issue to the Court's attention, in a prompt manner. Simple fairness, then, requires the Court to do its best to balance the legitimate interests of both parties.

*Ergo*, Defendants' motion to disqualify Mr. Wright and the firm of Domengeaux and Wright is DENIED.

Defendants will not be allowed to put Mr. Wright on the stand to elicit testimony available from equally probative sources. However, to the extent that admissions by the president of Alpebo are not available from other sources, Defendants will not be precluded from submitting that evidence. How that evidence will be presented to the jury will be decided as the time of trial draws near.