896 P.2d 491

**Merle Applebaum SANDERS,
Petitioner–Appellant,**

v.

**Michael G. ROSENBERG,
Respondent–Appellee.**

No. 15559.

Court of Appeals of New Mexico.

April 6, 1995.

Certiorari Granted May 31, 1995.

812

Mel B. O'Reilly, Law Offices of Mel B. O'Reilly, Albuquerque, for petitioner-appellant.

Cindi L. Pearlman, Cindi L. Pearlman, P.C., Tijeras, for respondent-appellee.

## OPINION

PICKARD, Judge.

This case calls upon us to decide whether a trial court can disqualify a party's counsel of choice in a domestic relations case on the basis of either an alleged conflict of interest because the counsel is the party's spouse, or to serve the best interests of children involved in the matter. We decide that the trial court erred in disqualifying Mother's counsel, reverse the trial court's order disqualifying Mother's counsel, and remand to the trial court for further proceedings.

Mother, Merle Applebaum Sanders, and Father, Michael G. Rosenberg, were granted a divorce on July 10, 1985. Subsequently, the trial court has had to resolve a number of issues regarding child custody and support, attorney fees, and access to the parties' homes. During the course of this ongoing litigation, Mother married Steven K. Sanders in August of 1990, and Sanders entered his appearance for Mother. After several further proceedings, in the last of which Sanders requested attorney fees, Father made three separate motions to disqualify Sanders from his representation of Mother. The trial court issued a decision on the issue of disqualification, and entered an order disqualifying Sanders and certifying the issue for interlocutory appeal.

■ Initially, Husband argues that this Court does not have jurisdiction to hear this issue on interlocutory appeal, citing *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 434, 105 S.Ct. 2757, 2762, 86 L.Ed.2d 340 (1985), and *State v. Pacheco*, 115 N.M. 325, 327, 850 P.2d 1028, 1030 (Ct.App.1993). Those cases addressed the issue of whether interlocutory orders disqualifying counsel may be directly appealed under the collateral order doctrine. *See Richardson–Merrell*, 472 U.S. at 434, 105 S.Ct. at 2762–63; *see also Pacheco*, 115 N.M. at 327, 850 P.2d at 1030. In contrast, this case involves an issue certified for interlocutory appeal. Both New Mexico and the United States Supreme Court recognize that, although an order disqualifying counsel may not be properly appealed under the collateral order doctrine, an appellate court may hear the issue if it is certified by the trial court for interlocutory appeal. *Richardson–Merrell*, 472 U.S. at 435, 105 S.Ct. at 2763; *see also* NMSA 1978, § 39–3–4 (Repl.Pamp.1991); *cf. Carrillo v. Rostro*, 114 N.M. 607, 611, 845 P.2d 130, 134 (1992) (trial court denied party's request to have a different issue certified for interlocutory appeal). Because the issue was properly certified and because we granted the application to hear the appeal, we have jurisdiction.

The trial court noted two reasons for its decision to disqualify Sanders: that SCRA 1986, 16–107(B) (Repl.Pamp.1991), prohibited Sanders from representing Mother because the responsibility that Sanders owed to Mother's children as their stepfather may materially limit his ability to adequately represent Mother; and that the best interests of the children were not being met by Sanders' continued representation of Mother. Mother contends that the trial court erred in disqualifying Sanders for either or both of the above reasons.

■ SCRA 16–107(B) provides:

Unless otherwise required by these rules, a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation....

The Comment to the above rule warns that where an allegation of conflict is raised by the opposing party, "[s]uch an objection should be viewed with caution, however, for it can be misused as a technique of harassment." *Id.* New Mexico courts should look upon allegations of conflict with skepticism, especially where they are not raised at the onset of litigation or at the time when the lawyer being objected to first enters an appearance in the case. *See United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 244, 629 P.2d 231, 320 (1980), *cert. denied,* 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). Because motions for disqualification of opposing counsel carry with them the potential for abuse and harassment, the moving party must provide a "strong showing of necessity" of disqualification. *See United States v. Perlmutter,* 637 F.Supp. 1134, 1137 (S.D.N.Y.1986).

Father is correct in asserting that some courts have held that "[a] district court has broad discretion in determining whether disqualification is required in a given case," *Greater Rockford Energy & Technology Corp. v. Shell Oil,* 777 F.Supp. 690, 693 (C.D.Ill.1991), and other courts have held that any doubts should be resolved in favor of disqualification, *World Plan Executive Council v. Zurich Ins. Co.,* 810 F.Supp. 1042, 1047 (S.D.Iowa 1992). However, those same courts are sensitive to the fact that disqualification motions can be used as a technique of harassment, and both they and other courts have stated the general rule that courts should be cautious in granting disqualification motions because of their potential to impact on a litigant's choice of counsel. *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979); *Sanders v. Russell,* 401 F.2d 241, 246 (5th Cir.1968); *Greater Rockford,* 777 F.Supp. at 693–94; *Baker v. BP Am., Inc.,* 768 F.Supp. 208, 213 (N.D.Ohio 1991). Thus, some courts take the position that discipline by the regulatory authorities is more appropriate than disqualification. *See Nyquist,* 590 F.2d at 1246. This is consistent with the commentary to our disciplinary rules. *See* SCRA 1986, 16–101 (Scope) ("[t]he rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary

agencies"). *See also* Linda A. Winslow, *Federal Courts and Attorney Disqualification Motions: A Realistic Approach to Conflicts of Interest,* 62 Wash.L.Rev. 863, 879–80 (1987) (suggesting use of sanctions for either conflict of interest or for frivolous motions to disqualify). Other courts take the view that disqualification motions are appropriate vehicles for policing ethical violations because of regulatory agencies' apparent lack of vitality in enforcing disciplinary rules and because it is part of the judicial duty to clean one's own house. *In re American Airlines,* 972 F.2d 605, 611 (5th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

■ These differences in perspective need not detain us in this case. As a sister state's court has noted, "[a]lthough [a] district court has wide latitude in determining whether to disqualify counsel from participating in a given case, its discretion in such cases is not unlimited." *Cronin v. Eighth Judicial Dist. Ct.,* 105 Nev. 635, 781 P.2d 1150, 1153 (1989). There must be some identifiable conduct that is improper before a motion to disqualify will be sustained. *See id.*

■ In this case, the trial court based the portion of its ruling dealing with Sanders' alleged unethical conduct on SCRA 16–107. Even if there appears to be a conflict present under that rule, the attorney may continue representation of the client if the attorney reasonably believes the representation will not be affected, and the client consents after consultation. Sanders represented to the trial court that his representation of Mother would not be affected by any responsibilities that he might have to Mother's children. Father made no allegations which would refute that assertion. Mother explicitly manifested her consent to Sanders' representation after consideration of Sanders' responsibilities to Mother's children. Therefore, it does not appear that any violation of SCRA 16–107(B) occurred as a result of Sanders' representation of Mother. *See* Standing Comm. on Legal Ethics of the Va. State Bar, Op. 1455 (1992), *reprinted in* 1001 ABA/BNA Lawyers' Manual on Professional Conduct 8710 (Supp.1993) (lawyer representing his spouse in custody dispute with her ex-hus-

band may continue representation); *see also* Professional Ethics Comm. of the State Bar of Tx., Op. 468 (1991), *reprinted in* 1001 ABA/BNA Lawyers' Manual on Professional Conduct 8301 (1992) (lawyer who is not a named party to an action may represent his wife in the matter).

■ Father did not make a strong showing that disqualification of Sanders was necessary because of violations of SCRA 16–107. Given the lack of showing of an ethical violation, the trial court erred in disqualifying Sanders on this basis.

■ Father also asserts that the disqualification order was within the trial court's inherent powers to make a ruling in the best interests of the children. Father points us to no authority that supports his position that a trial court may, absent violations of ethical or other rules, disqualify counsel based on the best interests of children involved in the matter. This strongly suggests that no authority exists. *In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). While we agree that the authority of a trial court to fashion rulings in the best interests of the children involved in an action is broad, *see Jeantete v. Jeantete,* 111 N.M. 417, 421, 806 P.2d 66, 70 (Ct.App. 1990), we decline to find that such authority is broad enough to disqualify a party's counsel of choice absent an ethical violation or other violation of law, court order, or rule sufficient to remove counsel from a case. *See Nyquist,* 590 F.2d at 1246 ("[W]ith rare exceptions[,] disqualification has been ordered only in essentially two kinds of cases," both involving breaches of Code of Professional Responsibility.). It is unfortunate but true that much domestic relations litigation is not in the best interests of children. Nonetheless, our legislature has provided for the resolution of domestic disputes in court with all of the benefits and burdens of the adversary system. NMSA 1978, §§ 40–4–1 to –4B–10 (Repl.Pamp.1994). We are extremely reluctant to open the floodgates to motions to disqualify counsel under these circumstances. *Cf. In re Adoption of Francisco A.,* 116 N.M. 708, 720–33, 866 P.2d 1175, 1187–1200 (Ct.App.1993) (Hartz, J., specially concurring) (containing extended discussion of trial court's powers to act in the best interests of children).

We find that it was an abuse of discretion for the trial court to order the disqualification of Sanders as Mother's counsel. Thus, we need not reach Mother's claim of error in the trial court's refusal to take further evidence to determine the best interests of the children. We reverse and remand to the district court for proceedings consistent with the analysis herein.

IT IS SO ORDERED.

ALARID and BLACK, JJ., concur.