HOME DEPOT, U.S.A., INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Second District   No. 2—04—0042

Opinion filed February 8, 2005.

Michael H. Woolever, Mary Kay M. Martire, Tracy D. Williams, and Belinda S. Morgan, all of Foley & Lardner, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Brett E. Legner, Assistant Attorney General, of counsel), for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Home Depot, U.S.A., Inc., appeals from the trial court's interlocutory order granting a motion by defendants, the Department of Revenue (Department), Brian Hamer, Director of Revenue, and Judy Baar Topinka, Illinois State Treasurer, to transfer venue under section 2—103(a) of the Code of Civil Procedure (735 ILCS 5/2—103(a) (West Supp. 2003)) from Du Page County to Cook County. On appeal, plaintiff argues that the trial court erred in granting the motion, because (1) the Department maintains a "principal office" in Du Page County and (2) a part of the transaction at issue took place in Du Page County. We affirm.

## I. BACKGROUND

According to the record, plaintiff is a Delaware corporation headquartered in Atlanta, Georgia. Plaintiff operates more than 1,500 Home Depot stores in the United States, including 11 stores in Du Page County. The underlying case involves a dispute about plaintiff's Illinois income tax liability for four tax years. During the period in question, plaintiff filed taxes as a single company. After the Department audited plaintiff, it asserted that two of plaintiff's affiliate corporations, Home Depot International, Inc. (HD International), and Homer TLC, Inc. (Homer), were part of a unitary business group with plaintiff. These companies, along with plaintiff and other companies, are part of the Home Depot federal consolidated group (HD Group). The Department alleged that plaintiff had miscalculated its Illinois sales factor under section 304(a) of the Illinois Income Tax Act (35 ILCS 5/304(a) (West 2002)) by not including income from HD International and Homer.

On September 30, 2003, plaintiff paid, under protest, $17,447,504 to satisfy two proposed deficiency notices issued by the Department. It then filed the instant action in Du Page County, seeking declaratory and injunctive relief. Plaintiff alleged that HD International and Homer were not part of its unitary business group or, alternatively, that the Department incorrectly calculated its tax deficiency. Plaintiff's complaint also included the following allegations. During the tax years at issue, "Homer was engaged in the business of investment. Homer invested in intangible property, including intellectual property and marketable securities." Homer was not in the same general line of business as plaintiff and was not vertically integrated with plaintiff, because plaintiff operated retail stores while Homer invested in intangible property.

Plaintiff additionally alleged that during the relevant tax years, HD International was a "sales finance company" that was "primarily engaged in the business of making loans to other companies in the HD Group," including plaintiff, "for the express purpose of funding purchases of tangible personal property or services by the borrower." Plaintiff alleged that investment income earned by the HD Group had no " 'operational' " connection to plaintiff's business in Illinois.

On November 4, 2003, defendants filed a special limited appearance and moved to transfer venue to Cook County under section 2—103(a) or, alternatively, under the doctrine of *forum non conveniens*. After a hearing on the motion, the trial court concluded that plaintiff's choice of venue in Du Page County was improper under section 2—103(a) because the Department did not maintain a "principal office" in Du Page County and because no part of the transaction giving

rise to the suit occurred in Du Page County. The trial court granted defendants' motion and transferred the case to Cook County. Plaintiff petitioned for leave to appeal under Supreme Court Rule 306(a)(4) (210 Ill. 2d R. 306(a)(4)), and we granted its petition.

## II. ANALYSIS

### A. Standard of Review

■ We first examine the proper standard of review for the grant or denial of a motion to transfer on the ground of improper venue. The appellate court has issued what appears to be conflicting decisions on this subject. In *Lake County Riverboat L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 951 (2000), this court held that a decision of whether a certain venue is proper should be reviewed *de novo*, provided that the facts are undisputed. Several other cases have also applied the *de novo* standard. See *Reynolds v. GMAC Financial Services*, 344 Ill. App. 3d 843, 847 (5th Dist. 2003); *Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d 335, 339-41 (5th Dist. 2003); *Reichert v. Court of Claims*, 327 Ill. App. 3d 390, 393-94 (5th Dist. 2002), *vacated on other grounds*, 203 Ill. 2d 257 (2003). However, just one month after this court filed *Lake County Riverboat L.P.*, we held that a trial court's determination of proper venue would not be overturned absent an abuse of discretion. *Johnson v. Compost Products, Inc.*, 314 Ill. App. 3d 231, 236 (2000). The use of such a standard is also supported by other appellate court cases. See *Southern & Central Illinois Laborers' District Council v. Illinois Health Facilities Planning Board*, 331 Ill. App. 3d 1112, 1115 (5th Dist. 2002); *Long v. Gray*, 306 Ill. App. 3d 445, 449 (1st Dist. 1999).

We believe that both standards are applicable here. Section 2—103(a) provides, in relevant part:

> "Actions *must* be brought against a public, municipal, governmental or quasi-municipal corporation in the county in which its principal office is located or in the county in which the transaction or some part thereof occurred out of which the cause of action arose." (Emphasis added.) 735 ILCS 5/2—103(a) (West Supp. 2003).

The statute's use of the term "must" implies that proper venue is mandatory rather than discretionary. See *Boxdorfer*, 339 Ill. App. 3d at 339-40. Although a defendant may waive the issue of proper venue (see 735 ILCS 5/2—104(b) (West 2002)), the trial court has no discretion to deny a motion to transfer, based on improper venue, when the plaintiff has failed to satisfy the statute's requirements. See *Boxdorfer*, 339 Ill. App. 3d at 340. Whether the plaintiff has satisfied these statutory requirements raises a mixed question of law and fact. See

*Lake County Riverboat L.P.*, 313 Ill. App. 3d at 951. Where, as in this case, there is no dispute concerning the facts upon which the trial court's venue ruling is based, only questions of law remain. See *Du Page County Board of Review v. Department of Revenue*, 339 Ill. App. 3d 230, 233 (2003) ("Generally, whether a given set of historical facts satisfies a given constitutional or statutory standard *is* considered a question of law subject to *de novo* review" (emphasis in original)). Here, we must determine, as a matter of law, whether the Department maintains a "principal office" in Du Page County and whether some part of the transaction leading to this suit occurred there, within the meaning of section 2—103(a). Thus, *de novo* review is appropriate for these matters. See also *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 506-07 (2003) (statutory construction is a question of law subject to *de novo* review).

Defendants argue that when reviewing a mixed question of law and fact, Illinois law requires deference to a trier of fact's decision. Defendants point out that administrative decisions involving mixed questions of law and fact are reviewed under a "clearly erroneous" standard. See *Carpetland U.S.A., Inc. v. Department of Employment Security*, 201 Ill. 2d 351, 369 (2002); *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001). However, this standard applies to the review of administrative decisions in part due to long-standing deference to an agency's experience and expertise in interpreting its governing statutes. See *AFM Messenger*, 198 Ill. 2d at 394. While some courts have used the supreme court's holding in *AFM Messenger* as an indication that the clearly erroneous standard should be applied to mixed questions in nonadministrative cases (see, *e.g.*, *Anderson v. First American Group of Cos.*, 353 Ill. App. 3d 403 (2004)), our supreme court has not held that this standard, or a largely deferential standard, applies to *all* mixed questions of law and fact. To the contrary, in some cases our supreme court has used a bifurcated standard for mixed questions of law and fact. See *People v. Pitman*, 211 Ill. 2d 502, 512 (2004); *People v. Crane*, 195 Ill. 2d 42, 51-52 (2001) (using bifurcated standard for mixed questions of law and fact); see also *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1143-45 (2004) (mixed question of law and fact in which the issue of whether the law, as applied to the established facts, is or is not violated receives review under "clearly erroneous" standard. Some mixed issues are more fact-based than others, and the determination of the standard of appellate review requires a recognition of the disparate institutional competencies of trial and appellate courts); K. Coles, *Mixed Up Questions of Fact & Law: Illinois Standards of Appellate Review in Civil Cases Following the 1997 Amendment to Supreme Court Rule 341*, 28 S. Ill. U. L.J. 13 (2003).

Defendants also argue that the fact that a statute appears to require a particular result if certain criteria are met does not compel *de novo* review. Defendants set forth the examples of class certification and the decision to grant intervention as of right. Regarding class actions, section 2—801 of the Code of Civil Procedure (735 ILCS 5/2—801 (West 2002)) states that "[a]n action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds" certain criteria. However, unlike section 2—103(a), which uses the compulsory language "must," the class action statute uses the permissive language "may."

Defendants also provide the example of intervention as of right. Section 2—408 of the Code of Civil Procedure (735 ILCS 5/2—408 (West 2002)) states that "anyone shall be permitted as of right to intervene in an action" if the party satisfies certain criteria. We acknowledge that although the statute uses the compulsory term "shall," the decision to allow or deny intervention, whether permissively or as of right, is within the trial court's discretion. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 58 (2002). The word "shall" is generally construed as mandatory language, but this rule is not inflexible (*People v. Felella*, 131 Ill. 2d 525, 539 (1989)); "the word 'shall' may be held to be merely directory only where no advantage is lost, no right is destroyed, and no benefit is sacrificed, either to the public or to any individual" (*Serpico v. Urso*, 127 Ill. App. 3d 667, 670-71 (1984)). This principle applies to section 2—408, as the purpose of intervention is to avoid the multiplicity of actions. See *Birkett*, 202 Ill. 2d at 57. In contrast, proper venue ensures that a defendant will not be forced to defend itself in a county, arbitrarily chosen by a plaintiff (*Stambaugh v. International Harvester Co.*, 102 Ill. 2d 250, 260-61 (1984)), that has little or no relation to the defendant or the transaction leading to the case (*Johnson*, 314 Ill. App. 3d at 236). Proper venue is an important privilege that a defendant has a right to insist upon. *Stambaugh*, 102 Ill. 2d at 261. Thus, we believe that the term "must" in section 2—103(a) remains compulsory. In any event, we believe that *de novo* review is the most appropriate standard of review to determine what constitutes a "principal office" in the context of this case; the evidentiary facts are uncontroverted, leaving a question of law as to this issue.

Returning to the more specific issue of the standard of review for the judgment rendered by the trial court on the ultimate issue of venue, we recognize that a final judgment determining venue is properly reviewed for an abuse of discretion. Typically, there is more than one proper venue from which the trial court may choose. For

example, *forum non conveniens* is a concept distinct from that of venue. *V.G. Marina Management Corp. v. Wiener*, 337 Ill. App. 3d 691, 693 (2003). Even if the criteria for subject matter jurisdiction, personal jurisdiction, and venue have been met, the court may grant a *forum non conveniens* motion if the court determines that an alternative forum can better serve the parties' convenience and the ends of justice. *V.G. Marina Management Corp.*, 337 Ill. App. 3d at 693-94. Such a decision requires the exercise of discretion (see *V.G. Marina Management Corp.*, 337 Ill. App. 3d at 695), in contrast to a decision of whether the plaintiff has met statutory venue requirements. See also *Lake County Riverboat L.P.*, 313 Ill. App. 3d at 952 ("trial court is vested with *forum non conveniens* discretion only after it has made the legal determination that there is more than one proper venue and the venue in which plaintiff chose to file the action is one of the proper venues").

Cases applying an abuse of discretion standard for decisions regarding improper venue have relied on our supreme court's use of such a standard in *Stambaugh*. There, the supreme court did not discuss the proper standard of review but instead relied on *Morrison v. Community Unit School District No. 1*, 44 Ill. App. 3d 315 (1976), as authority. *Stambaugh*, 102 Ill. 2d at 263. However, *Morrison* involved a motion to change venue based on the potential prejudice of jurors in the county. *Morrison*, 44 Ill. App. 3d at 319-20. Such a situation requires a trial court to exercise its discretion in determining whether prejudice exists and could affect the trial, in contrast to the question of whether the venue is improper in that it fails to meet statutory requirements. See *Boxdorfer*, 339 Ill. App. 3d at 340; see also *Gouker v. Winnebago County Board of Supervisors*, 37 Ill. 2d 473, 475 (1967) (trial judge has discretion to grant or deny motion to transfer venue based on alleged prejudice of citizens). We believe that *Stambaugh* is applicable to our review of the ultimate judgment rendered by the trial court because, as established below, we determine that there was more than one proper venue to which the trial court could have transferred this cause.

## B. Principal Office

We now consider in what counties, if any, the Department has a "principal office" for purposes of section 2—103(a). We will apply *de novo* review relative to this issue. Plaintiff argues that venue in Du Page County is proper under section 2—103(a) because the Department maintains a "principal office" in Du Page County.[1] The statute

---

[1]Plaintiff does not argue that venue in Du Page County is proper based on any alleged presence of the State Treasurer, so we do not address this issue.

states, in relevant part, that an action against a governmental entity must be brought "in the county in which its principal office is located." 735 ILCS 5/2—103(a) (West Supp. 2003). The statute does not define the word "principal," nor has any court directly addressed what constitutes the "principal office" of a state agency. However, both parties assert that a governmental entity can have more than one "principal office" under section 2—103(a). Defendants maintain that the Department splits its duties between the State's capital, Springfield (Sangamon County), and its population and financial center, Chicago (Cook County). Plaintiff asserts that the Department's division of duties is more widespread and that the Department's West Chicago office, located in Du Page County, is a "principal office."

The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. *Carver*, 203 Ill. 2d at 507. The best indication of that intent is the statute's language. While the language should be given its plain and ordinary meaning, it should also be given the fullest possible meaning to which it is susceptible. *Carver*, 203 Ill. 2d at 507. Courts must consider the reason for the law, the evil to be remedied, and the object to be obtained by the statute. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111 (1993). We will presume that in enacting the statute, the legislature did not intend absurdity, inconvenience, or injustice. *Carver*, 203 Ill. 2d at 508.

The plain and ordinary meaning of "principal" includes the "most important, consequential, or influential." Webster's Third New International Dictionary 1802 (1986); see also Black's Law Dictionary 1210 (7th ed. 1999) (defining "principal" as "[c]hief; primary; most important"); Black's Law Dictionary 1211 (7th ed. 1999) (defining "principal place of business" as "place of a corporation's chief executive offices, which is typically viewed as the 'nerve center' "). As mentioned, venue statutes reflect a legislative determination that a party should not have to defend an action in a county that has little or no relation to the party or to the transaction from which the case arises. *Johnson*, 314 Ill. App. 3d at 236. Venue statutes are designed to ensure that the case is brought in a forum convenient to the defendants, potential witnesses, or both. *Tipton v. Estate of Cusick*, 273 Ill. App. 3d 226, 228 (1995). Courts should liberally construe venue statutes in order to effect, rather than defeat, a change of venue. *Stambaugh*, 102 Ill. 2d at 261.

While a municipality can have only one "principal office" under section 2—103(a) (see *County of Fulton v. Prairie Plan Project*, 80 Ill. App. 3d 441, 443 (1979)), we agree with the parties that other public entities, such as the Department, can have more than one "principal

office." *Cf. Metropolitan Life Insurance Co. v. Estate of Cammon*, 929 F.2d 1220, 1223 (7th Cir. 1991) (for federal jurisdiction purposes, a corporation has a *single* principal place of business where its executive headquarters are located). As demonstrated by the facts of this case, more than one office can arguably qualify as the entity's most important office. Such an interpretation in no way defeats the purpose of section 2—103(a)'s "principal office" requirement, which is to ensure that the case is brought in a forum convenient to the defendants.

■ In determining the principal place of business for a corporation, Illinois courts have looked at the location of the offices responsible for the entity's main activity, the location where the entity's business is carried out, the location where business decisions are made, the location where trustees and beneficiaries reside, and the location of the entity's "nerve center." *Westchester Fire Insurance Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 630 (2000); see also *Skidmore v. Gateway Western Ry. Co.*, 333 Ill. App. 3d 947, 955 (2002) (corporation's principal place of business is the business's nerve center and location where it has chosen to centralize its activities); Annotation, *Determination of Corporation's Principal Place of Business for Purposes of Diversity Jurisdiction Under 28 U.S.C. § 1332(c)*, 6 A.L.R. Fed. 436 (1971) (in determining a corporation's principal place of business for jurisdictional purposes, federal courts look to the state with the corporation's largest volume of operations and highest number of executives). Similarly, we may determine where a governmental entity has a "principal office" by examining where the entity makes its policy decisions, as demonstrated by the location of its director and executive officers, and where the entity has centralized its activities. In other words, we will look to where the entity has its "nerve center(s)."

Plaintiff argues that section 2—103(a) should be read *in pari materia* with section 2—102 of the Code of Civil Procedure (735 ILCS 5/2—102 (West 2002)). According to plaintiff, the determination of whether the Department maintains a "principal office" in Du Page County depends on whether the Department "resides" in the county, within the meaning of section 2—102. Section 2—102 states that a corporation resides in any county in which it has a "registered office" or "other office" or is "doing business." 735 ILCS 5/2—102 (West 2002). Plaintiff cites *Lawless v. Village of Park Forest South*, 108 Ill. App. 3d 191 (1982), and *County of Fulton*, 80 Ill. App. 3d 441, in support of its assertion that section 2—102 is applicable.

In *Lawless*, the plaintiff brought suit against several municipal corporations, headquartered in different counties. *Lawless*, 108 Ill.

App. 3d at 192. These defendants sought to apply section 2—103(a), which would have required the plaintiff to pursue a separate case in each applicable county. *Lawless*, 108 Ill. App. 3d at 194. The plaintiff argued that the general venue provision, section 2—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—101), applied. This provision fixes venue in the county of residence of any defendant joined in good faith or in a county where part of the cause of action arose. *Lawless*, 108 Ill. App. 3d at 194. The court held that when multiple public corporations, with "principal offices" in different counties, are defendants in a single action, sections 2—103(a) and 2—101 must be read together, and the "principal office" of a public corporation is equivalent to its "residence." The court concluded that in such a situation, venue is proper in the county of residence of *any* public corporation joined in good faith. *Lawless*, 108 Ill. App. 3d at 196-97.

*Lawless* is inapplicable to this case because it involved multiple public entities with "principal offices" in different counties. Here, the Department is the only public entity that plaintiff has sued, so the issue of conflicting venues does not arise. Additionally, in *Lawless*, the location of each entity's "principal office" was undisputed, so it does not support plaintiff's argument that section 2—102 is relevant to this determination.

We next examine *County of Fulton*. There, Fulton County brought suit against the Metropolitan Sanitary District of Greater Chicago (Sanitary District), a municipal corporation. *County of Fulton*, 80 Ill. App. 3d at 441-42. The Sanitary District moved to transfer venue from Fulton County to Cook County, and the trial court granted the motion. The appellate court allowed Fulton County's interlocutory appeal. *County of Fulton*, 80 Ill. App. 3d at 442. The court examined the relationship between section 7(1) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 7(1)), which is the precursor to section 2—103(a), and section 601 of the Counties Act (Ill. Rev. Stat. 1977, ch. 34, par. 601). Section 7(1) required that an action against a public, municipal, or governmental corporation be brought in the county in which the public entity's "principal office" was located, while section 601 stated that a county could bring an action in any county in which the defendant resided. *County of Fulton*, 80 Ill. App. 3d at 442-43. Fulton County argued that section 601 controlled and that the Sanitary District was a "resident" of Fulton County because of its numerous activities there. *County of Fulton*, 80 Ill. App. 3d at 443. The appellate court disagreed and held that a municipal corporation resided, within the meaning of section 601, where its "principal office" was located under section 7(1). *County of Fulton*, 80 Ill. App. 3d at 443.

*County of Fulton* provides no support for plaintiff's argument that a public entity's "principal office" is located in any county where the entity has an office or is doing business. Indeed, the case bolsters defendants' contention that a public entity resides where its "principal office" is located. Thus, we examine the facts of the case, under the standards previously discussed, in order to determine whether the Department has a "principal office" in Du Page County. We note that a defendant filing a motion to transfer venue has the burden of proving that the plaintiff's venue selection was improper. *Southern & Central Illinois Laborers' District Council*, 331 Ill. App. 3d at 1116.

As mentioned, the underlying facts upon which the trial court based its decision are undisputed. In support of their motion to transfer, defendants submitted the affidavit of Paul Bogdanski, the Department's associate general counsel. Bogdanski averred the following. The Department's "principal offices" are in Springfield and Chicago, and it "maintains a regional office in Du Page County for conducting in-state field audits." The audits giving rise to this litigation took place outside Illinois.

In defendants' reply in support of their motion to transfer venue, they included additional documentation to support their position that the Department's principal offices are in Springfield and Chicago. Printouts from the Department's Internet site show that these offices are listed at the bottom of every page, and that primary telephone numbers and mailing addresses are for Springfield and Chicago. Copies of the State telephone directory show that the Department's Director has offices in both Springfield and Chicago, and that these offices are the bases for all of the Department's top officials. The directory lists dozens of Department divisions and bureaus as based in Springfield and Chicago, while one division, a regional in-state audit division, is based in West Chicago. An affidavit by David Hunt, a manager of the budget office for the Department, states that the Department employs 50 people in the West Chicago office, 248 people at the James R. Thompson Center in Chicago (plus another 156 employees in other Cook County locations), and 1,484 people in Springfield.

Plaintiff, on the other hand, submitted a page from the Department's Internet site entitled "Regional Office Locations and Contact Information," which lists the Department's 11 offices, including those in Springfield, Chicago, and West Chicago. The page does not refer to the Springfield and Chicago offices as "principal" offices, though these offices are again listed separately on the bottom of the page. Plaintiff also submitted an affidavit of one of its attorneys. The affidavit states that the attorney called the Department's West Chicago office and

learned the following. The office is open from 8:30 a.m. to 5 p.m., the same hours as the Springfied and Chicago offices. The office is a "full-service" office where taxpayers may ask questions about state taxes and make state tax payments. Taxpayers may also register their businesses and obtain Illinois business tax numbers at this location.

■ We conclude that defendants sufficiently established that the Department does not maintain a "principal office" in Du Page County. While the Department clearly has an office in Du Page County, which would be sufficient for venue under section 2—102 if the Department were a private corporation, section 2—103(a) imposes the heightened requirement that a public entity have a "principal office" in the county where the suit is brought. See *Board of Library Trustees v. Cinco Construction, Inc.*, 276 Ill. App. 3d 417, 424 (1995) (by passing section 2—103(a), legislature gave governmental units clear legal right to have actions against them brought in their home counties). While the West Chicago office may be a "full-service" office for taxpayer needs, it does not constitute a Department "nerve center." Significantly, the Department's Director has offices in Springfield and Chicago, and other top executives are based in either the Springfield or the Chicago office. Furthermore, these offices house the vast majority of the Department's divisions and employ much larger numbers of employees than the West Chicago office, showing that the Department's activities are centralized at the Springfield and Chicago offices.

Plaintiff maintains that the number of workers at each office should not be determinative of whether the office is a "principal office," because otherwise a corporation's manufacturing facility, or a State agency's office with many employees performing ministerial functions, would be considered a "principal office." We agree with plaintiff that the number of employees should not be the sole factor in labeling an office as a "principal office." However, in this case, the number of workers at the Springfield and Chicago offices simply serves to bolster defendants' assertion that these offices are the Department's "principal offices."

## C. Transaction

■ Plaintiff alternatively argues that venue in Du Page County is proper because a part of the transaction giving rise to the suit occurred there. We review this issue *de novo* because the underlying facts are not disputed. Under section 2—103(a), venue is proper in the county where the public entity has its "principal office" or in the county in which the transaction or some part thereof occurred from which the cause of action arose. 735 ILCS 5/2—103(a) (West Supp. 2003). The term "transaction" includes every fact that is an integral

part of the cause of action, but it is not so narrowly interpreted to include only those immediate facts from which the cause of action arose. *Southern & Central Illinois Laborers' District Council*, 331 Ill. App. 3d at 1117.

Under transactional venue principles, the court must analyze two dependent variables to determine whether a particular venue is proper, namely (1) the nature of the cause of action and (2) the place where the cause of action springs into existence. *Lake County Riverboat L.P.*, 313 Ill. App. 3d at 952. Examples of the latter include the place where the parties carried on significant negotiations or signed an agreement, or where the agreed-upon action was or was supposed to be performed. This is typically the location where the parties engaged in direct adversarial dealings or where an event occurred that changed the parties' legal relationship. *Lake County Riverboat L.P.*, 313 Ill. App. 3d at 953. Preparatory acts, such as completing a license application, are insufficient to invoke transactional venue. *Lake County Riverboat L.P.*, 313 Ill. App. 3d at 953-54.

Plaintiff asserts that when a taxpayer's state income tax liability is at issue, the transactional prong of section 2—103(a) is satisfied if the taxpayer earns income in the county in which the litigation was filed. According to plaintiff, its Du Page County store had gross sales of over $345 million in 2003, and it paid over $500,000 in property taxes to Du Page County. Plaintiff argues that its Du Page County sales had a direct bearing on its state income tax liability during the tax years in question and are therefore part of the transactions underlying the income tax issues raised by plaintiff's action. We disagree.

Plaintiff sought declaratory and injunctive relief from its suit. For declaratory judgment actions, proper venue depends on the issues involved and the relief sought. *Lake County Riverboat L.P.*, 313 Ill. App. 3d at 954. While plaintiff filed its complaint to challenge its state tax liability, plaintiff was more specifically challenging the Department's assertion that Homer and HD International were part of plaintiff's unitary business group, and the effect such inclusion would have on plaintiff's tax liability. Plaintiff alleged that Homer was an investment corporation that was not in the same line of business as plaintiff or vertically integrated with plaintiff, and that HD International was a sales finance company that primarily loaned money to plaintiff and other members of the HD Group. Plaintiff further alleged that, assuming these companies were part of a unitary business group with plaintiff, the Department incorrectly factored intangible business assets into plaintiff's tax liability. Plaintiff did not directly dispute the taxes imposed on the income earned by its Du Page County stores.

Thus, this income, though relevant to plaintiff's general tax liability, is too attenuated from the underlying suit to be a part of the transaction giving rise to the suit. As such, the trial court did not err in granting defendant's motion to transfer venue from Du Page County to Cook County.

Based on our resolution of this issue, we need not address plaintiff's argument that, assuming venue is proper in Du Page County, there was no basis to transfer the case on *forum non conveniens* grounds.

### D. Ultimate Judgment

We have determined that Cook and Sangamon Counties both qualify as locations of "principal offices" under section 2—103(a), and that Du Page County does not. Had plaintiff raised the issue of whether the trial court erred in transferring the case to Cook County, as opposed to Sangamon County, we would review the transfer under an abuse of discretion standard. However, as the issue has not been raised, we do not address it.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Du Page County circuit court.

Affirmed.

McLAREN and BYRNE, JJ., concur.